In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-1265 & 00-3189

KENNETH COOKE,

Plaintiff-Appellee, Cross-Appellant,

v.

STEFANI MANAGEMENT SERVICES, INC.,
and TUSCANY RESTORANTE, INC.,

Defendants-Appellants, Cross-Appellees.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 7604--David H. Coar, Judge.

Argued March 30, 2001--Decided May 14, 2001


   Before FLAUM, Chief Judge, and POSNER and
EVANS, Circuit Judges.

   EVANS, Circuit Judge.  In February 1998
Kenneth Cooke was hired as a bartender at
Tuscany Restorante, an upscale restaurant
in Chicago's Wrigleyville neighborhood.
Tuscany, along with a dozen or so other
restaurants, is owned and operated by
Stefani Management Services, Inc./1 At
the time Cooke was hired, Tuscany was
managed by Fred Lagon. As general
manager, Lagon possessed the power to
hire, fire, and promote Cooke, as well as
schedule his shifts. Cooke claims that
almost immediately after he began working
at Tuscany, Lagon, a homosexual,
subjected him to a litany of sexual
propositions, inappropriate touching, and
nonverbal gestures of a sexual nature.
According to Cooke, this treatment was
unwelcome, offensive, and degrading, and
created an oppressive working
environment. He complained numerous times
to Lagon and to Jennifer Wilson, the
assistant manager of Tuscany, to no
avail. Finally, after Lagon propositioned
him on June 21, 1998, Cooke "basically
got really forceful with [Lagon]," and
told him "no means no . . . and if you
ask me again, there's going to be some
serious problems." The next day, Lagon
fired Cooke, purportedly for
"inappropriate interactions with
coworkers, superiors, and a neighborhood

restauranteur." Cooke then brought this single-count, sexual harassment claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq. The case was tried before a jury.

Stefani's case contesting liability consisted mainly of calling a number of Cooke's coworkers to testify that they had never witnessed any harassment. Joy Soulier, Cooke's girl friend at the time, also testified that Cooke shared many personal matters with her but never mentioned any inappropriate conduct by Lagon. In addition, Stefani tried to cast doubt on Cooke's assertion that he was uncomfortable at Tuscany by demonstrating that he came to the restaurant on his days off to eat, drink, or socialize with friends. According to Stefani, this occurred once or twice per week, but Cooke maintains he visited Tuscany on his days off only occasionally, at the request of Soulier. On at least one occasion, Cooke went out socially with Lagon and others. Finally, Stefani introduced an April 27, 1998, note from Cooke to Lagon thanking him for a gift of a bottle of wine, which read:  "Fred Just a note to say 'thanxs' [sic] for all you have done. Here's looking at many more fun days to come. Thanks again for the vino! K."

Stefani also presented evidence concerning its sexual harassment policy. The policy when Cooke began working at Tuscany prohibited sexual harassment and directed victims of harassment to report it to Steven Hartenstein, Stefani's chief financial officer. In April 1998 the policy was changed as part of an overall revision of the company's employee handbook. The new policy required the victim of sexual harassment to "immediately contact [his or her] manager and/ or general manager." Stefani held a management training seminar on sexual harassment and its new policy, which Lagon attended.

As we see it, this was not a slam dunk case for either side. Stefani's case-- aided in no small part by Cooke's "thank you for the vino" letter--was strong and could have been accepted by the jury (and by us, if Cooke were appealing the result), but Cooke's version of the events was not unbelievable as a matter of law. And what did the jury do? It

returned a general verdict in favor of Cooke, giving him fairly meager awards of $7,500 in back pay and lost benefits and $10,000 in punitive damages. The jury rejected Cooke's request for compensatory damages for humiliation and past and present emotional suffering. Finally, after reviewing Cooke's attorneys fee petition and Stefani's objections, the district court awarded Cooke attorneys fees of $49,835.38 and $519.80 in costs. Stefani appeals the court's denial of its motion for judgment as a matter of law on liability and punitive damages, and Cooke cross-appeals the court's attorneys fee award, which gave him significantly less than he sought.

A hostile work environment is created by conduct which has "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (quoting 29 C.F.R. sec. 1604.11(a)(3) (1985)). For hostile work environment sexual harassment to be actionable under Title VII, the conduct "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Id. at 67 (citation omitted). The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993). A plaintiff, however, is not required to prove that the harassment caused psychological injury. Id. at 22.

In order successfully to challenge the jury's liability finding, Stefani must demonstrate that no reasonable jury could have found for Cooke, even when viewing the evidence in the light most favorable to him. See Gile v. United Airlines, Inc., 213 F.3d 365, 372 (7th Cir. 2000). To that end, Stefani first argues that no witnesses corroborated Cooke's allegations of sexual harassment, so the jury was unreasonable to believe his account of his interactions with Lagon. We give short shrift to this argument because it asks us to evaluate the credibility of the witnesses and assess the weight of the evidence, two tasks

better left to the jury that heard the testimony given in court. See Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1129 (7th Cir. 1997). Suffice it to say that the fact that Lagon did not sexually harass Cooke in the presence of other Tuscany employees does not negate the possibility that he did so in their absence. The jury was entitled to credit Cooke's detailed testimony concerning the numerous incidents of harassment perpetrated by Lagon.

Stefani next contends that even if Cooke's account of the harassment is accurate, his actions demonstrate that he did not subjectively perceive it as severe or pervasive. In support of this argument, Stefani points to Cooke's allegedly frequent visits to Tuscany on his days off, his social outing with a group of people that included Lagon, and the personal "vino" note. According to Stefani, if Cooke subjectively perceived the environment at Tuscany as severely or pervasively oppressive, he would have avoided it, and Lagon, at all costs. Although this argument has some appeal, we ultimately reject it because the balance of power between a supervisor and employee is qualitatively different in a social setting than it is at work. During his scheduled shifts, Cooke was not free to leave Tuscany, or even turn and walk away from Lagon (an action that could be considered insubordinate), if he felt harassed. Not so in a social setting. Moreover, we will indulge the presumption that Lagon was more likely to harass Cooke when he was working alone behind the bar than when he was accompanied by friends on a social occasion. Finally, the jury could have believed that the fact that Cooke was courteous to Lagon, his boss, by thanking him for a gift did not undermine Cooke's tale of harassment. In short, none of Cooke's voluntary interactions with Lagon satisfy Stefani's "herculean burden" of overcoming the jury's verdict on liability. See Gile, 213 F.3d at 372./2

We turn next to the issue of punitive damages. The standard for awarding punitive damages in Title VII cases is set out in the statute, 42 U.S.C. sec. 1981a(b)(1), and the Supreme Court's decision in Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999). Section 1981a(b)(1) states that a party may

recover punitive damages if his employer engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." The terms "malice" and "reckless indifference" refer to the employer's knowledge that it may be violating federal law, not its awareness that it is engaging in discrimination. Kolstad, 527 U.S. 535. Thus, the employer must perceive some risk that its actions violate federal law in order to be liable for punitive damages. Id. at 536.

In a case involving vicarious liability, the plaintiff must also establish a basis for imputing liability to the employer by showing that the employee who discriminated against him was a manager, acting within the scope of his employment. Bruso v. United Airlines, Inc., 239 F.3d 848, 858 (7th Cir. 2001). An employer may escape punitive damages liability for its manager's acts, however, if it can demonstrate a good faith attempt to establish and enforce an antidiscrimination policy. According to Kolstad, "an employer may not be vicariously liable [for punitive damages] for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good faith efforts to comply with Title VII.'" 527 U.S. 545 (citation omitted). Such good faith efforts, if proven, "demonstrate that the employer itself did not act in reckless disregard of federally protected rights, thus making it inappropriate to punish the employer for its [manager's] contravention of its established policies." Bruso, 239 F.3d at 858./3

Stefani--apparently conceding that Lagon was its manager, acting within the scope of his employment--focuses its argument on Kolstad's good faith defense, pointing to its sexual harassment policies, the management seminar on sexual harassment attended by Lagon, and an antiharassment poster mounted at Tuscany. Both the pre- and post-April 1998 policies make clear that Stefani prohibits sexual harassment by its employees, and both polices provide a mechanism for reporting violations of this directive. Cooke does not explain his failure to report Lagon's conduct to Mr. Hartenstein as required by the policy in place prior to April 1998.

And although the post-April 1998 policy directed employees to report incidents of sexual harassment to their manager or general manager, and lacked a bypass provision to address situations in which the manager was the harasser, common sense should have led Cooke to report the harassment to someone superior to Lagon in the chain of command. See Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1038 (7th Cir. 1998) ("A reasonable person, realizing that her complaints were ineffective, would . . . seek a remedy elsewhere."). He failed to do this as well. On this record, there is simply no evidence that anyone in the upper management of Stefani had any inkling that Lagon was engaging in sexually harassing behavior./4 "[T]he law against sexual harassment is not self-enforcing," Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1014 (7th Cir. 1997), and without knowledge of Lagon's conduct, there is nothing Stefani could have done--beyond the general policies and training it did provide--to ensure compliance with Title VII.

Cooke attempts to work around the fact that Stefani lacked actual knowledge of Lagon's conduct by imputing knowledge to the company through Lagon. In Deters v. Equifax Credit Information Services, Inc., 202 F.3d 1262 (10th Cir. 2000), after the plaintiff was sexually harassed by several coworkers, she complained to the manager designated as the company's authority responsible for implementing its antidiscrimination policy, but he failed to respond. In the lawsuit that followed, the company sought refuge under Kolstad, arguing that it was not responsible for its designee's failure adequately to remedy the harassment. The court held that Kolstad's good faith defense was negated, however, because the company's designee was informed of the harassment and acted with malice or reckless indifference in addressing the situation. Id. at 1271. Cooke argues that he reported Lagon's harassment to the individual designated in Stefani's post-April 1998 sexual harassment policy (Lagon), so Lagon's knowledge of the harassment and his malicious acts should be imputed to the company.

Cooke's reliance on Deters is misplaced because that case involved a claim of direct liability, i.e., a claim that the

supervisor failed adequately to remedy the harassment. See id. at 1270 n.3. In such a case, the supervisor acts on behalf of the company in enforcing (or failing to enforce) its sexual harassment policy, and it is therefore fair to attribute his knowledge and acts to the company. In a vicarious liability case such as this one, however, the supervisor directly perpetrated the harassment through a series of rogue acts motivated by a desire to amuse himself, not benefit his employer. If Lagon's knowledge of the harassment and malicious intent were imputed to Stefani, the good faith defense established by Kolstad could never be employed in a vicarious liability case. Because Kolstad itself is a vicarious liability case, and because we will not impose punitive damages on an innocent party, see City of Chicago v. Matchmaker Real Estate Sales Center, Inc., 982 F.2d 1086, 1100 & n.14 (7th Cir. 1992), this is a conclusion we cannot reach. Cooke points to no evidence establishing that Stefani had any actual knowledge of Lagon's conduct, so nothing more by way of good faith efforts to comply with Title VII could be expected. Accordingly, we must strike the punitive damages portion of the jury's award.

Finally, we turn to Cooke's cross-appeal on the issue of attorneys fees. Cooke's attorneys requested $115,955.75 in fees and $1,039.60 in costs, but the district court, after subtracting $16,285 in duplicative and excessive requested fees, awarded only 50 percent of those amounts: $49,835.38 in fees and $519.80 in costs. First, we affirm the court's $16,285 off-the-top reduction. The district court's memorandum opinion and order sets out its detailed findings on several instances of excessive billing by Cooke's attorneys, and we find no abuse of discretion in these findings. Connolly v. National Sch. Bus Serv., Inc., 177 F.3d 593, 595 (7th Cir. 1999) (standard of review for attorneys fee award is abuse of discretion). Second, we find the district court's 50 percent limited-success reduction entirely justified. Cooke requested nearly $300,000 from the jury but, after our decision today, will go home with $7,500, hardly an overwhelming success. In addition, contrary to Cooke's "information and belief," this was not a groundbreaking, first-time-ever-in-this-district, same-sex sexual harassment

case, see, e.g., Shermer v. Illinois Department of Transportation, 171 F.3d 475 (7th Cir. 1999), but rather a run-of-the-mill employment case in which Cooke himself was the only substantive witness for his side of the case. In a simple case with no broad social impact, Cooke's attorneys should be happy to receive fees of nearly seven times the amount of their client's recovery. See Cole v. Wodziak, 169 F.3d 486, 488-89 (7th Cir. 1999) (expressing view that fee award exceeding damages is rarely justified).

AFFIRMED in part and REVERSED in part.

FOOTNOTES

/1 Tuscany Restorante, Inc., also appears on our caption as a defendant because it was so named in the complaint. It was, however, subsequently dismissed from the case.

/2 Stefani also suggests, without citing the relevant case law, that it cannot be held vicariously liable for Lagon's conduct because Cooke failed to report the harassment to the company's CFO as required by the pre-April 1998 sexual harassment policy. Two recent Supreme Court cases, Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998), establish an affirmative defense for employers in hostile environment cases when one of their supervisors perpetrates the harassment. In such cases, the employer can avoid liability if it demonstrates (1) that it exercised reasonable care to prevent and promptly address reports of sexually harassing behavior and (2) that the employee unreasonably failed to take advantage of the preventative or corrective opportunities offered by the employer. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807. But the Supreme Court was careful to limit this defense to cases in which no "tangible employment action" was taken against the employee. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 808. In this case, Lagon's termination of Cooke was a "tangible employment action," so the Ellerth/Faragher defense cannot protect Stefani from liability. See Molnar v. Booth, 229 F.3d 593, 601 (7th Cir. 2000) (tangible employment action taken against plaintiff bars Ellerth/ Faragher defense). As we discuss infra, however, Stefani's sexual harassment policies are relevant to the issue of punitive damages.

/3 At least one circuit court has held, post-Kolstad, that if the manager in question is sufficiently senior, he may be considered a proxy for the corporation, and punitive damages may be

imposed without regard to the corporation's good faith efforts to comply with Title VII. See Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 517 (9th Cir. 2000); see also Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 536 n.19 (7th Cir. 1993) (pre-Kolstad case applying same rule for liability purposes). Even if this rule survives Kolstad, however, it would not apply to this case. Lagon--who was merely the on-site manager of one of Stefani's numerous restaurants--did not occupy a position in the corporate hierarchy such that he could be considered a proxy for Stefani. See Splunge v. Shoney's, Inc., 97 F.3d 488, 491-92 & n.2 (11th Cir. 1996) (refusing to impute state of mind of restaurant manager perpetrating harassment to corporate owner of restaurant for punitive damages purposes).

/4 Cooke suggests that Stefani was on notice of Lagon's inappropriate conduct because upper management had reprimanded Lagon on one or more occasions for being "too friendly" with his staff. Notwithstanding Cooke's counsel's evasive answers to our questions on this issue, it is clear that Lagon was reprimanded for fraternizing with his staff, not harassing them. Knowledge of fraternization, essentially the opposite of harassment, could not have placed Stefani on notice that it had a sexual harassment problem brewing at Tuscany.