**Dawn CARL, Plaintiff,**

v.

**Rodney PARMELY and the City of Metropolis, a municipal corporation, Defendant.**

No. 99–CV–4162–JPG.

United States District Court, S.D. Illinois.

June 28, 2001.

Stephen C. Williams, Michael S. Miles, Womick Law firm, Carbondale, IL, for Dawn Carl.

Ronald J. Kramer, Deborah A. Kop, Seyfarth, Shaw, Chicago, IL, for City of Metropolis.

Bradley K. Bleyer, Marion, IL, for Rodney Parmely.

## *MEMORANDUM AND ORDER*

GILBERT, District Judge.

This matter comes before the Court on the motion of defendant City of Metropolis ("City") for summary judgment on Counts II, III, VII, VIII and XV (Doc. 39). Plaintiff Dawn Carl ("Carl") has responded to the motion (Doc. 46), and the City has replied to her response (Doc. 49). The Court also addresses the City's Motion for Leave to File a Reply in Excess of Five Pages and for Leave to File a Response to Plaintiff's Statement of Contested Facts (Doc. 51) and four motions in limine (Docs. 52, 53, 54 & 55).

### I. Motion for Leave to File

The Court will grant the City's request for leave to file a reply in excess of five pages and will deny its request to file a response to Carl's statement of contested facts (Doc. 51). The Court has not considered the Response to Plaintiff's Statement of Contested Facts in ruling on this motion.

### II. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Spath v. Hayes Wheels Int'l–Ind., Inc.*, 211 F.3d 392, 396

(7th Cir.2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases, such as employment discrimination cases, that often turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir.2000). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322–26, 106 S.Ct. 2548; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir.1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *accord Michas*, 209 F.3d at 692.

### III. Facts

Viewing the evidence in the record in the light most favorable to Carl and draw-

ing all inferences in her favor, the Court finds that the admissible evidence established the following facts.

### A. *Carl's Employment*

Carl worked for the City as a laborer in the City's street department from June 29, 1997, through March 13, 2000. The terms of her employment were governed by a collective bargaining agreement with her union.

Carl had a commercial driver's license ("CDL") and, as a part of her job, drove vehicles requiring such a license such as the street sweeper. Beginning in the fall of 1997, Carl was the alternate street sweeper operator, which entailed filling in for the regular street sweeper operator when she was not available. During the first several months after the City purchased the street sweeper in the fall of 1997, Carl drove it 20 to 30 times because the regular street sweeper operator did not have her CDL yet and because Carl needed training to get used to driving it. Operating the street sweeper did not increase Carl's pay. Because she used her CDL for City work such as driving the street sweeper, she was subject to random drug testing conducted for the City by an outside organization. The City played no part in determining who was to be randomly tested.

During the time Carl worked for the City, Parmely also worked in the street department and held the position of assistant street commissioner. Parmely supervised Carl in her daily activities, and she considered him to be her boss. He did not, however, have the authority to discipline, hire, fire or approve leave for laborers such as Carl. Both Carl and Parmely were also supervised by Paul Johnston, the City's public works director. Johnston was responsible generally for assigning work to street department workers.

The entire time that Carl worked for the City, the City maintained a non-harassment policy forbidding sexual harassment. In fact, Carl knew from the beginning of her employment that sexual harassment was not permitted by the City. The policy instructed anyone who believed she was the subject of harassment to report the incident as soon as possible to her department head, Mayor Beth Ann Clanahan ("Clanahan"), or Clanahan's administrative assistant. The policy required that complaints be investigated and discipline be imposed, if warranted. Carl was given a copy of the policy when she began working for the City in June 1997 and again in January 1998. The policy was also posted on a bulletin board where street department employees worked. When Clanahan discovered in late January 1998 that the policy had been removed from the bulletin board, she replaced it and admonished City employees not to remove it.

### B. *Parmely's Behavior*

Shortly after Carl began working for the City, Parmely began a course of behavior that Carl found offensive and sexually harassing. For example, on July 8, 1997, Parmely leaned over Carl and touched her with his shoulder and arm while they were in the passenger compartment of a truck and told a third person that they were going to the cemetery, a code phrase for engaging in sexual behavior. He also made other references to the cemetery in connection with Carl. Carl also alleges without reference to any admissible evidence contained in the record that in July and August 1997 Parmely told co-workers that Carl was Parmely's girlfriend.[1] On

---

1. Carl makes several references in her statement of contested facts to evidence that is not contained in the record. Unless otherwise noted, the Court has not considered any material contested fact alleged by Carl that is unsupported by admissible evidence.

January 12, 1998, Parmely placed his hand on Carl's breast for one to two minutes while giving her a work assignment and kept his hand there even as she backed away. Several days later, while Carl was sweeping the garage, Parmely ran his hand from Carl's hairline through her hair to fan it out.

## C. *The City's Response*

On January 16, 1998, Carl told two fellow employees that Parmely had behaved in ways that she believed inappropriate. Those employees told Clanahan, who met with Carl later the same day to discuss Carl's complaints. At Clanahan's request, Carl prepared a list of eight specific incidents involving Parmely from July 8, 1997, to January 20, 1998, and several general behaviors of Parmely's that Carl found offensive. Carl had not complained about Parmely's behavior before this time. Carl filed a grievance through her union on January 23, 1998, about the same incidents.

Clanahan began investigating Carl's complaints. To aid in her investigation, Clanahan placed Parmely on administrative leave for two days, January 22 and 23, 1998. As a result of her investigation, she suspended Parmely without pay from January 26 to 30, 1998. Carl's union was satisfied with this response to Carl's sexual harassment grievance and did not pursue the matter further.

On January 28, 1998, during Parmely's suspension, Clanahan met again with Carl to discuss the results of the investigation and asked her to report any future problems with Parmely to Clanahan on the same day that the problems arose. Carl agreed to do so. Clanahan reiterated her request to be informed immediately of future incidents involving Parmely in a letter to Carl dated January 29, 1998. Carl made no such reports until July 15, 1998.

In the meantime, the City took several additional steps to prevent sexual harassment in the workplace. First, on January 30, 1998, Clanahan met with City employees in the public works department, which included the street department, about the City's non-harassment policy. Parmely did not attend the meeting because he was suspended on that day. Clanahan took this opportunity to distribute copies of the non-harassment policy. Second, Clanahan met with Parmely after his suspension about his behavior, instructed him orally and in writing not to make personal comments to Carl and gave him a copy of the non-harassment policy. Parmely acknowledged that he had received a copy of and understood the policy. Third, the City required all employees, including Parmely, to attend training regarding the non-harassment policy in February 1998. Fourth, Clanahan followed up with Carl several weeks after Parmely returned from his suspension to ensure than no other problems had arisen with respect to Parmely. Carl reported that nothing had happened, and Clanahan again instructed Carl to report immediately anything that made her uncomfortable.

Within several days of speaking with Clanahan in January 1998 about Parmely, Carl was tested for drugs for the first time in connection with her CDL. The City did not assign Carl to drive the street sweeper after her complaint to Clanahan.

## D. *Parmely's Return*

After his suspension, Parmely returned to his position as assistant street commissioner and implied to Carl that there was nothing she could do to get rid of him because of his political connections with the City. Apparently not learning his lesson, Parmely's behavior recommenced. Beginning in mid-February 1998, Parmely made "sexually obscene" gestures with his

tongue towards Carl at least twice a day until late June 1998. On March 11 and June 24, 1998, Parmely parked in front of Carl's house and on March 24, 1998, commented that a female houseguest of Carl's "looked good." In April 1998, Parmely told Carl that she "fill[ed] out her shirt real good," and assigned her to pick up concrete blocks, telling her that he thought she would be able to perform that task because she was a "big chested woman." Finally, on June 10, 1998, Parmely remarked that Carl had many men at her house and that she must be trying to decide between them.

On June 10, 1998, Carl filed a charge with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR").

On July 7, 1998, the City disconnected the radio in the City vehicle that Carl drove.

On July 15, 1998, in an unrelated investigation of Parmely, Clanahan spoke with Carl about Parmley. At that time, Carl reported that Parmely had continued with his offensive behavior after his January 1998 suspension and that she had kept a diary of his behavior. Via memorandum dated July 23, 1998, Clanahan again asked Carl to report problems with Parmely to her immediately and directed Carl to submit a written statement regarding Parmely's post-suspension offensive conduct before the end of the following work day. Carl responded with a written statement complaining of nine incidents involving Parmely from February 17 to July 22, 1998. Parmely was suspended without pay from July 15 to 30, 1998. Carl alleges without reference to any admissible evidence contained in the record that while Parmely was suspended he came to the front of her house, said he would return to work the following Monday, and asked her

if she had missed him. Carl amended her EEOC and IDHR charge on September 29, 1998, to allege additional acts of sexual harassment by Parmely and to allege retaliation by the City.

Within a week of speaking with Clanahan in mid-July about Parmely, Carl was again tested for drugs in connection with her CDL. Carl has presented inadmissible hearsay testimony that Parmely told two of Carl's coworkers not to speak with her because she would get them in trouble; they apparently did not heed his advice. She also alleges without any admissible evidence that Parmely assigned her worse tasks after her complaints than he had before her complaints, although all the tasks he assigned her were within the laborer job description.

### E. *Carl's Suspension*

In December 1998, Carl was assigned to attend to a City brush fire. Clanahan saw Carl sitting in a vehicle while watching the fire and instructed her that she should stand outside to perform that task. Nevertheless, Carl continued to sit inside her own personal vehicle for the assignment. At the end of the day, she replenished the gas she used to keep her car running with gas belonging to the City, as she had been authorized to do when she used her personal vehicle for a specific work assignment in the summer of 1997. However, she had not been specifically authorized to use her personal vehicle for the December 1998 work, to sit inside a vehicle while attending to the fire, or to replenish her gas tank with the City's gas. Clanahan suspended Carl without pay from January 8 to 18, 1999, citing Carl's unauthorized use of City gas in her personal vehicle and for remaining inside the vehicle while tending the fire despite specific instructions not to. The City was not aware of anyone else who replenished their personal

gas tank with City gas after using their personal vehicle to attend to a City fire.

Carl filed a new EEOC/IDHR charge on June 3, 1999, alleging retaliation.

In July 1999, Clanahan placed Carl on "proof status" because she had taken significant sick leave for a broken leg. "Proof status" required Carl to submit a doctor's note whenever she was absent because of illness. Clanahan had failed to remove Carl from "proof status" until after November 1999, the first day of her deposition relating to this lawsuit, but had not actually required a doctor's note before approving Carl's absences for "quite a while" before then.

Carl filed this suit against Parmely and the City in August 1999.

### F. *Carl's Termination*

During the entire time of Carl's employment with the City, the City had an ordinance requiring City employees to maintain a residence within the City limits. Carl lived within the City until 2000. In late 1999, she wanted to get a larger, nicer house. She first looked at houses in the City, but when she could not find a house she liked within her price range there, she began looking elsewhere. In early 2000, Clanahan became aware that Carl was contemplating moving out of the City and reminded her of the City's residency ordinance. Nevertheless, around March 1, 2000, Carl moved to Paducah, Kentucky. Believing that Carl was in violation of the ordinance, Clanahan suspended Carl without pay on March 6, 2000. On March 13, 2000, the Metropolis city council discharged Carl, citing violation of the same ordinance. No other City employees live outside of the City.

Carl amended her complaint on August 25, 2000. Count I of her First Amended Complaint is against Parmely in his official capacity and alleges sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Count II seeks to hold the City vicariously liable for Parmely's alleged acts of sexual harassment. Count III is against the City and alleges that it retaliated against Carl for complaining of and filing charges with the EEOC and the IDHR relating to the alleged harassment. Counts IV, V and VI are state law claims against Parmely for battery, assault and intentional infliction of emotional distress, respectively. Count VII seeks to hold the City vicariously liable for Parmely's alleged intentional infliction of emotional distress. Count VIII is against the City and alleges sexual harassment in the form of a hostile work environment in violation of Title VII. Count XV, which is actually the ninth count of the First Amended Complaint, alleges a claim under Title VII against the City for constructive discharge.

### IV. Analysis

#### A. *Hostile Environment Discrimination*

Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of sex: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

#### 1. *Plaintiff's Case*

 This is a close case, but the Court must conclude that Carl has presented enough evidence from which a reasonable jury could find that she was subject to a hostile work environment in violation of Title VII. A hostile work environment is created by conduct that has "the purpose or effect of unreasonably in-

terfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *accord Cooke v. Stefani Mgmt. Servs.*, 250 F.3d 564, 566 (7th Cir.2001). Sexual harassment that creates a hostile work environment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399) (further internal quotations omitted); *see also Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 1509–10, 149 L.Ed.2d 509 (2001) (*per curiam*); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). "Harassment need not be severe *and* pervasive to impose liability; one or the other will do." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir.2000).

 Whether an environment is sufficiently hostile or abusive must be judged by "'looking at all the circumstances,'" including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher*, 524 U.S. at 787–788, 118 S.Ct. 2275 (quoting *Harris v. Forklift Systems*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)) (further internal quotations omitted); *accord Breeden*, 121 S.Ct. at 1510; *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 889 (7th Cir.2001). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (quotations and citations omitted); *accord Breeden*, 121 S.Ct. at 1510. "The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Cooke*, 250 F.3d at 566–67 (citing *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367); *accord Murray*, 252 F.3d at 889.

 A plaintiff can only survive summary judgment on a hostile work environment claim if she can present evidence that the allegedly hostile conduct was so severe or pervasive as to create an abusive working environment in violation of Title VII. *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir.1997). The Court must examine the totality of the circumstances and "should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Mason v. Southern Ill. Univ.*, 233 F.3d 1036, 1045 (7th Cir.2000). Courts have found that "teasing about waving at squad cars [like a prostitute might], ambiguous comments about bananas, rubber bands, and low-neck tops, staring and attempts to make eye contact, and four isolated incidents in which a co-worker briefly touched her arm, fingers, or buttocks" did not amount to an impermissibly hostile environment as a matter of law. *Adusumilli v. City of Chicago*, 164 F.3d 353, 361–62 (7th Cir.1998), *cert. denied*, 528 U.S. 988, 120 S.Ct. 450, 145 L.Ed.2d 367 (1999). On the other hand, an uninvited kiss and an attempt at a second one, an attempt to remove a plaintiff's bra, and lewd proposition for sex were sufficient to state a hostile environment claim. *Hostetler*, 218 F.3d at 807–08.

■ In this case, the Court finds that Carl has presented sufficient evidence to show that her work environment was subjectively and objectively hostile. Parmely was rude and boorish without question. At work, he frequently referred euphemistically to sexual activity by talking about "the cemetery" in connection with Carl several times and made rude "sexually obscene" gestures with his tongue on a daily basis for several months in a row. He also twice referred to the size of Carl's chest. He leaned over her once and touched her with his shoulder, and he touched her breast and her hair with his hand. In off-work hours, he staked out her house, noted her visitors, and reported his opinion of them to Carl later at work. This is not the story of a sensitive or model employee. In fact, for Parmely's mature seventy-six years, his behavior was extraordinarily immature.

As noted above, this is a close case. In the end, however, the Court believes that a reasonable jury could find that Parmely's conduct amounted to an objectively hostile environment that changed the terms and conditions of Carl's employment with the City. Parmely's more innocuous mannerisms—references to the cemetery and tongue gestures—were frequent, although they did not physically threaten or intimidate her and were not extraordinarily humiliating. His two references to the size of Carl's chest were also not physically threatening but were, of course, more embarrassing. In truth, the vast majority of Parmely's offensive behavior was merely offensive utterances and, with the exception of the tongue gestures, occurred only once or twice a month.

The more egregious of Parmely's conduct was infrequent. His surveillance of Carl after work hours, while arguably intimidating and possibly physically threatening, never amounted to anything more than looking at Carl and her house and only occurred a few times. There is no evidence that Parmely was a peeping Tom or that he did anything more personally invasive than any person could have legally done by parking on a public street. As far as physical contact, Parmely touched Carl three times. In July 1997 he touched her once with his shoulder and in January 1998 he touched her breast once and her hair once. While it bothered Carl to be exposed to such conduct, Parmely did not unreasonably interfere with Carl's ability to continue working as a laborer for the City during the time of his activities.

In considering the frequency of Parmely's more innocuous sexual conduct, the three occasions on which he touched Carl, and the implicit threat that even remote surveillance carries with it, the Court concludes that Parmely's conduct, when taken all together, could be sufficiently severe or pervasive to alter Carl's terms and conditions of employment.

## 2. *Employer's Liability for Supervisor's Conduct*

Even though Carl may be able to present evidence of a hostile work environment in violation of Title VII, the City could not be liable because Carl cannot present evidence that Parmely took a tangible employment action against her or that the City failed to act appropriately to prevent and correct the situation.

Despite the City's protests otherwise, the Court assumes for the purpose of this motion that Parmely was a supervisor with respect to Carl. Although the City has presented evidence that he could not discipline, hire, fire or approve leave for Carl, he assigned her tasks on a daily basis. The Court presumes that he could cause her to be disciplined or fired if he had reported that she was insubordinate to him or refused to take assignments he doled

out. Therefore, the Court will treat Parmely as Carl's supervisor.

■ Generally, employers are vicariously liable for an actionable hostile environment created by a supervisor with authority over the victimized employee. *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) *Molnar v. Booth,* 229 F.3d 593, 600 (7th Cir.2000). If the supervisor took tangible employment action against the employee, the employer is strictly liable for the supervisor's acts. *Faragher,* 524 U.S. at 808, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 760–61, 118 S.Ct. 2257; *Molnar,* 229 F.3d at 600. However, if the supervisor did not take any tangible employment action against the employee, the employer may raise an affirmative defense to liability or damages. *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Molnar,* 229 F.3d at 600. To succeed in its affirmative defense, the employer must show that (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by her employer or to avoid harm otherwise. *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Molnar,* 229 F.3d at 600.

### a. *Tangible Employment Action*

■ The City is entitled to an opportunity to prove the aforementioned affirmative defense because Carl has not presented any evidence that Parmely took tangible employment action against her. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257 (citing with approval *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir.1993)). "Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act." *Ellerth,* 524 U.S. at 762, 118 S.Ct. 2257. However, "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." *Murray v. Chicago Transit Auth.,* 252 F.3d at 888 (7th Cir.2001) (internal quotations, citations and ellipsis omitted). Actions that do not significantly affect a plaintiff's job responsibilities or benefits cannot be tangible employment actions. *Id.; see, e.g., Fyfe v. City of Fort Wayne,* 241 F.3d 597, 601 (7th Cir.2001) (retaliation context; denial for reimbursement for travel and lodging expenses at seminar not an adverse employment action); *Oest v. Illinois Dep't of Corr.,* 240 F.3d 605 (7th Cir.2001) (negative performance evaluations not adverse employment actions); *Bell v. EPA,* 232 F.3d 546, 555 (7th Cir. 2000) (cancelling a conference called by plaintiff and failing to greet her or speak to her were trivial matters that were not adverse employment actions). Requiring a plaintiff to do tasks within her job description does not constitute an adverse employment action. *Kause v. Alberto–Culver Co.,* No. 97 C 3085, 2000 WL 875742, at *6 (N.D.Ill. June 28, 2000); *see also Hardy v. City of Country Club Hills,* No. 97 C 188, 1998 WL 901704, at *4 (N.D.Ill.Dec.17, 1998).

■ Carl has not presented any evidence that Parmely took a tangible adverse employment action against her. In

her response to the City's motion for summary judgment, Carl argues that Parmely took tangible employment actions against her when he assigned Carl the worst and riskiest jobs within her job description, sent her to do those jobs without a partner, did not permit her to drive the street sweeper after her first complaint to Clanahan and instructed other laborers not to talk to Carl. Many of these alleged actions are unsupported by the admissible evidence in the record. Nevertheless, even assuming that Parmely did what Carl said he did, his actions do not amount to a tangible adverse employment action. Parmely did not change Carl's employment status; there is no evidence that he fired her, failed to promote her or caused her a significant change in benefits such as pay.

It appears that Carl is arguing that Parmely reassigned her significantly different job responsibilities, which is a tangible adverse employment action. *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257. However, because all of the tasks to which Parmely assigned her were job responsibilities within the laborer job description, she was never assigned to any task that she could not have been assigned to at any time prior to her complaints to Clanahan. Thus, her job responsibilities did not really change. Nothing Parmely alleges, and certainly nothing she presents evidence of, amounts to a tangible adverse employment action. Therefore, the City is entitled the opportunity to prove the affirmative defense set forth in *Faragher* and *Ellerth.*

b. *Affirmative Defense*

▮ The Court reiterates that to succeed in its affirmative defense, the City must show that (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by her

employer or to avoid harm otherwise. *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Molnar,* 229 F.3d at 600.

There is no evidence that the City failed to exercise reasonable care to prevent sexually harassing behavior. The evidence shows that the City had a non-harassment policy during the entire time of Carl's employment. The policy clearly provided that sexual harassment would not be tolerated and set forth three people that an employee could approach to report such behavior. The City posted the policy on a bulletin board in Carl's and Parmely's work area and, when it discovered that the policy had been taken down, immediately reposted it and warned City employees not to remove it again. Within two weeks of Carl's first complaint to Clanahan about sexual harassment, the City met with public works department employees to remind them of and redistribute the non-harassment policy. The next month the City held a training session regarding the non-harassment policy.

There is also no evidence that the City failed to exercise reasonable care to correct Parmely's sexually harassing behavior. Within days of Carl's January 1998 complaint, Clanahan conducted an investigation which resulted in Parmely's five-day suspension without pay. When Parmely returned to work, Clanahan gave him a copy of the non-harassment policy and verified that he understood it. She asked Carl to report immediately to her any further harassing behavior by Parmely and followed up with Carl several weeks after Parmely's return from suspension to make sure he had not resumed his misconduct. Months later, when the City finally learned that Parmely was up to his old tricks despite Carl's efforts to conceal them, it suspended him without pay for sixteen days. There is no evidence that

Parmely sexually harassed Carl at any time after his second suspension.

 The Court concludes that no reasonable jury could find that the City did not act in a way reasonably likely to prevent and correct sexually harassing behavior. It maintained and posted a sexual harassment policy, promptly followed up on complaints made under that policy, progressively disciplined the offending employee, and reeducated other employees about the non-harassment policy. It is hard to imagine any other measures the City should reasonably have taken. Carl argues that the City should not have returned Parmely to his position in the street department after his first suspension and that the City acted unreasonably because it failed to oversee Parmely's daily interaction with her. Title VII, however, does not require an employer to remove a harassing supervisor from his position or to closely oversee him if other reasonable measures are taken with the aim of preventing further harassment. *See, e.g., Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir.1995). Securing Carl's promise to report future harassment immediately was a reasonable method of detecting future harassment.

 There is also no evidence that would render reasonable Carl's failure to take advantage of preventive or corrective opportunities. "[T]he law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." *Parkins v. Civil Constr. of Ill., Inc.*, 163 F.3d 1027, 1038 (7th Cir.1998) (quotations omitted). As noted above, the City had a non-harassment policy and provided three alternative people to whom Carl could have complained about Parmely. After January 1998, she also had an open invitation from Clanahan to report immediately any of Parmely's behavior that made her uncomfortable. Carl claims that her failure to report Parmely's continuing actions was reasonable because she was afraid to lose her job and was afraid that Parmely would retaliate against her. This is nonsense which no reasonable jury could swallow. *See Hill v. American Gen. Fin., Inc.*, 218 F.3d 639, 644 (7th Cir.2000) ("apprehension does not eliminate the requirement that the employee report harassment: an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment." (quotations omitted)). The non-harassment policy clearly stated that harassment would not be tolerated. In the absence of evidence otherwise, Carl should have followed the policy and reported harassment to any of the three possible people. Furthermore, Clanahan's prompt response to Carl's original complaint should have allayed Carl's fears of losing her job or of impermissibly retaliatory work assignments from Parmely if she complained again about harassment or retaliation. There is nothing reflected in the record that could have reasonably led Carl to believe that Clanahan would not similarly respond to future complaints by investigating and appropriately disciplining Parmely. Thus, Carl's failure to report Parmely's harassment was patently unreasonable.

Even viewing the facts and making all reasonable inferences in Carl's favor, the Court concludes that no reasonable jury could find that the City is not shielded from liability for Parmely's acts. For this reason, the Court will grant summary judgment for the City on Counts II and VIII.

**B.** *Retaliation*

Title VII also forbids an employer to discriminate against an employee because

she has "opposed any practice made an unlawful employment practice by [Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a); *Clark Co. Sch. Dist. v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 1509, 149 L.Ed.2d 509 (2001) *(per curiam ).*

### 1. *Plaintiff's Case*

 To establish a retaliation claim under Title VII, a plaintiff may present direct evidence of retaliation or proceed using a burden shifting mechanism. *Fyfe v. City of Fort Wayne,* 241 F.3d 597, 601 (7th Cir.2001); *Contreras v. Suncast Corp.,* 237 F.3d 756, 765 (7th Cir.2001). "Direct evidence is that which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption, and usually takes the form of an acknowledgment of discriminatory intent by the employer." *Fyfe,* 241 F.3d at 601 (quotations omitted). Because Carl has not offered any direct or circumstantial evidence of retaliation, she must proceed under the burden shifting approach.

 In order to prevail on a claim for retaliation under Title VII using the burden-shifting mechanism, a plaintiff must first establish a *prima facie* case by showing that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal link between the protected expression and the adverse action. *Fyfe,* 241 F.3d at 601–02; *Aviles v. Cornell Forge Co.,* 241 F.3d 589, 592 (7th Cir.2001). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Aviles,* 241 F.3d at 592; *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1457 (7th Cir.1994). If the defendant is able to provide evidence of such a reason, the

burden shifts back to the plaintiff to show that the articulated reason is actually a pretext for discrimination. *Aviles,* 241 F.3d at 592; *Dey,* 28 F.3d at 1457.

The City does not dispute that Carl engaged in statutorily protected activity when she reported Parmely's conduct in January and July 1998, when she filed and amended EEOC/IDHR charges in June and September 1998 and in June 1999, or when she filed this suit in July 1999. Therefore, the Court need only consider the remaining elements of Carl's *prima facie* case: adverse employment action and causal connection.

#### a. *Adverse Employment Action*

 Carl suffered two adverse employment actions after engaging in statutorily protected activity. The adverse employment action required for a retaliation claim mirrors the type of tangible employment action required to deprive an employer of his affirmative defense to liability by a sexually harassing supervisor; both must cause a materially adverse change in the terms and conditions of employment. *See Fyfe,* 241 F.3d at 602. "An adverse action occurs when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job." *Hill v. American Gen. Fin., Inc.,* 218 F.3d 639, 645 (7th Cir.2000). Mere inconvenience or alteration of job responsibilities are not adverse employment actions. *Krause v. City of La Crosse,* 246 F.3d 995, 1001 (7th Cir.2001); *Rabinovitz v. Pena,* 89 F.3d 482, 488 (7th Cir.1996); *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir.1993).

In her response to the City's motion for summary judgment, Carl argues that she received bad job assignments, was no longer allowed to drive the street sweeper, was subjected to multiple drug tests when other employees were not and was placed on

proof status with respect to sick leave. In addition, she claims that Parmely retaliated against her by telling other employees not to talk to her and that the City retaliated against her by disengaging the radio in the car to which she was assigned. She also claims that rules regarding tending to the City fire were enforced differently for her than for other employees and that as a result she was suspended without pay. Finally, she argues that she was terminated from her position as laborer.

 The Court has already determined that Carl's receiving bad job assignments that fell within the laborer's job description, not being assigned to drive the street sweeper, and having fellow employees instructed not to speak to her do not amount to adverse employment actions. The Court further finds that, in light of the fact that Carl was prohibited from using drugs in the first place as a regular part of her job, an increase in the frequency of drug tests without any discipline for failing a test does not constitute an adverse employment action; it merely subjected her to the inconvenience of submitting more samples for testing. Likewise, being on proof status by itself, without any resulting discipline as a result of being on proof status, did not materially change the terms and conditions of Carl's employment; it merely subjected her to the inconvenience of submitting a note where other employees were not required to do so. Carl cannot seriously argue that disconnecting a car radio is a material change in an employment term or condition; it merely meant that Carl had to sing *a cappella* during work hours. Even in combination, the above factors do not amount to material changes in the terms and conditions of Carl's employment with the City.

In fact, Carl has raised only two true adverse employment actions: her six-day suspension and her termination. The Court will now determine whether Carl has satisfied the third requirement, showing causation, with respect to those two actions.

b. *Causation*

 Carl admits in her response to the motion for summary judgment that there is no direct evidence that her suspension or termination was caused by her sexual harassment complaints but instead relies on the temporal relationship between the complaints and the adverse employment actions to show causation. A "telling temporal sequence" alone may establish a causal relationship. *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (*per curiam*); *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir.1998). However, to establish a causal connection merely by temporal proximity, the employer's adverse action must follow "fairly soon" after or be "very close" to the employee's protected conduct. *Breeden*, 121 S.Ct. at 1511; *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 603 (7th Cir.2001) (18–month interval between expression and adverse employment action does not show causation); *Sweeney*, 149 F.3d at 557 (nearly three years insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir.1992) (four months insufficient); *Juarez v. Ameritech Mobile Comm., Inc.*, 957 F.2d 317, 321 (7th Cir. 1992) (six months insufficient); *compare Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1314–15 (7th Cir.1989) (one week sufficient); *Johnson v. Sullivan*, 945 F.2d 976, 980 (7th Cir.1991) (one day sufficient).

Carl reported Parmely's conduct to the City in January and July 1998, filed an EEOC/IDHR charge in June 1998, amended her EEOC/IDHR charge in September 1998, filed a new EEOC/IDHR charge in June 1999, and filed this lawsuit in July 1999. Carl was suspended for six days in

January 1999 on the grounds that she used City gas in her personal vehicle without authorization and that she remained inside a vehicle while tending the City fire. She was terminated in March 2000 on the grounds that she did not reside within the City, as required by City ordinance. Thus, her suspension occurred approximately twelve months after her first report to Clanahan, approximately seven months after her first EEOC/IDHR charge, approximately six months after her second report to Clanahan and approximately four months after the amendment to her first EEOC/IDHR charge. Her termination occurred more than two years after her first report to Clanahan, more than a year and a half after her first EEOC/IDHR charge, its amendment and her second report to Clanahan, approximately nine months after her second EEOC/IDHR charge and approximately eight months after she filed this suit.

None of these time periods reflect the "telling temporal sequence" required to demonstrate a causal connection between Carl's protected activity and the adverse employment actions about which she complains. In fact, the shortest time between any of her protected activities and an adverse employment action was almost four months, a time period which the U.S. Court of Appeals for the Seventh Circuit has found insufficient to evidence a causal relationship. *See, e.g., Hughes,* 967 F.2d at 1174–75. There are no extraordinary circumstances in this case that would render such a nearly four-month delay "telling." For this reason, the Court finds that Carl cannot establish causation, the third element of her *prima facie* case of retaliation in violation of Title VII.

### 2. City's Legitimate Non–Discriminatory Reason

 Even if Carl had been able to establish a *prima facie* case of retaliation, the City would be able to meet its burden of producing evidence of a legitimate, non-discriminatory reason for her suspension and termination. The City has presented evidence that it suspended Carl for six days without pay because she put the City's gas in her personal vehicle without permission and remained inside her car to watch a fire despite instructions to perform the task outside her car. The City has presented evidence that it terminated Carl because she did not live within the City limits, as required by a City ordinance.

### 3. Pretext

 Carl cannot satisfy her burden of presenting evidence that the City's articulated reasons for disciplining and terminating her were pretext for retaliation. A plaintiff can demonstrate pretext by presenting evidence that her employer's articulated reason for an adverse employment action has no basis in fact, did not actually motivate the action, or was insufficient to motivate the action. *Velasco v. Illinois Dep't of Human Servs.,* 246 F.3d 1010, 1017 (7th Cir.2001). However, the Court is not a "superpersonnel department" whose function is to second guess an employer's personnel decisions. *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 889 (7th Cir.2001). The Court is not to determine whether the employer's decision to take the adverse employment action was correct, but whether the plaintiff has presented enough evidence to show that the articulated reason was a lie—that the employer did not honestly believe in the reason it has proffered. *Walker v. Glickman,* 241 F.3d 884, 888 (7th Cir.2001); *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995). Whether a proffered reason is reasonable can be evidence of whether the employer honestly believed it. "[T]he more objectively reasonable a belief is, the more likely it will seem that the belief was honestly held." *Flores v. Preferred Tech.*

*Group,* 182 F.3d 512, 516 (7th Cir.1999); *accord Gordon,* 246 F.3d at 889.

### a. *Suspension*

██ Carl admits that she sat in her personal vehicle to watch the fire and that she replenished her gas tank at the end of the day, both without explicit permission. She argues that the reasons given for her suspension could not actually have motivated her suspension because other employees were not disciplined for sitting in their personal vehicles to watch the fire after having been instructed not to do so and for replenishing their gas tanks afterward without authorization. "A plaintiff may establish pretext by offering evidence that other similarly situated employees were treated more favorably." *Essex v. UPS,* 111 F.3d 1304, 1311 (7th Cir.1997). Carl, however, has not presented any admissible evidence—anything more than hearsay and rumors—that such similarly employees exist and were treated differently that she was. The City, on the other hand, has presented evidence that Carl is the only employee it knows about in the particular situation.

In addition, the six-day suspension imposed for taking City property without explicit authorization is objectively reasonable. It was reasonable for the City to require explicit permission to take City gas to compensate for an employee's gas used to perform a specific designated task for the City. By the same token, no reasonable person could conclude that by authorizing Carl to use City gas in her personal vehicle for a specific task in the summer of 1997, it also authorized her to use City gas in her personal vehicle approximately one and a half years later for a completely different task. Furthermore, no municipality can tolerate conversion of its property by its employees, whether by deceit or by negligence, and is perfectly justified in imposing serious, but not extremely harsh, punishment for a first of-

fense. A one-week suspension without pay for taking gasoline is enough to get the offending employee's attention and teach her a lesson without inflicting extreme damage to her pocketbook. The punishment appears to be proportionate to the crime.

Because Carl has presented no evidence that other employees were treated differently than she was and because her suspension is objectively reasonable, the Court finds that she has not carried her burden of demonstrating pretext.

### b. *Termination*

Carl admits that there is a City ordinance requiring City employees to live within the City limits and that she moved out of the City limits in March 2000 in violation of this policy. She does not point to any City employee who was allowed to live outside of the City limits. In fact, in her response to the motion for summary judgment, she does not make any argument that the City's proffered reason for her termination was unworthy of credence or was pretext for retaliation. The City's response was objectively reasonable; if Carl would not abide by the ordinance requiring her, as a City employee, to live in the City, she could no longer be a City employee. The Court concludes that Carl has not carried her burden of demonstrating that the City's proffered reason for terminating her employment was pretextual or unworthy of credence.

For the foregoing reasons, the Court finds that no reasonable jury could find in favor of Carl on her retaliation claim and will grant summary judgment for the City on Count III.

### C. *Constructive Discharge*

██ Carl cannot prevail on her claim of constructive discharge. "To establish a claim for constructive discharge

under Title VII, a plaintiff must prove that his working conditions were so intolerable as a result of unlawful discrimination that a reasonable person would be forced into involuntary resignation." *Tutman v. WBBM–TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir.2000), *cert. denied,* 531 U.S. 1078, 121 S.Ct. 777, 148 L.Ed.2d 675 (2001); *see Vitug v. Multistate Tax Comm'n,* 88 F.3d 506, 516–17 (7th Cir. 1996). To prevail in a constructive discharge claim, the plaintiff must demonstrate that working conditions were more egregious than those required to prove a hostile environment claim. *Tutman,* 209 F.3d at 1050; *see, e.g., Taylor v. Western & S. Life Ins. Co.,* 966 F.2d 1188, 1191 (7th Cir.1992) (finding constructive discharge when the plaintiffs' boss constantly peppered plaintiffs with racist comments, brandished a pistol and held it to one plaintiff's head); *Brooms v. Regal Tube Co.,* 881 F.2d 412, 417, 423(7th Cir.1989) (finding constructive discharge where "repeated instances of grossly offensive conduct and commentary" culminated with an incident during which a co-worker showed the plaintiff a racist pornographic photograph, told her that she was hired to perform the task depicted in the photograph, grabbed the plaintiff and threatened to kill her).

As noted earlier, this is a close case with respect to Carl's hostile environment claim. It certainly does not rise to the level of constructive discharge. First, the Court questions whether the constructive discharge theory is even applicable. Constructive discharge, by its very nature of being "constructive," involves allegations of a forced *resignation,* not an apparent *involuntary termination* like Carl's. However, even if Carl could twist the theory to, and perhaps beyond, its limits to suggest that she was "constructively evicted" from the City because of Parmely's boorish behavior and therefore forced into

violating the City's residency ordinance, she could not prevail.

Carl's work environment was not so egregious that a reasonable person would have been forced to resign. Carl has not alleged any improper conduct by Parmely in the approximately 20 months before she was terminated. It is beyond comprehension how misconduct that occurred 20 months prior to Carl's move from the City could be so egregious as to somehow force her to move. Indeed, even if Parmely's conduct and the alleged retaliatory acts had been closer in time to her move, they would not come close to the death threats that have been found to amount to constructive discharge. Finally, Carl admits that she moved because she wanted to get a larger, nicer house, and that she had first looked at houses in the City. When she could not find a house she liked within her price range in the City, she began looking elsewhere. Obviously if Carl had considered living in the City, she cannot now seriously contend that her working conditions were so egregious that she was forced to move from it.

For these reasons, the Court finds that no reasonable jury could find that Carl was constructively discharged in violation of Title VII and will grant summary judgment for the City on Count XV.

## V. Remaining Claims

### A. *Count I*

 Count I is a hostile environment claim against Parmely in his official capacity. The Court reconsiders *sua sponte* its order of June 2, 2000, (Doc. 23) declining to grant Parmely's motion to dismiss (Doc. 13). The official capacity hostile environment claim against Parmely in his official capacity (Count I) is really a claim against the City, is redundant in light of the hostile environment claims explicitly brought against the City (Counts II and VIII) and

should therefore be dismissed. *See Schmidling v. City of Chicago,* 1 F.3d 494, 495 n. 1 (7th Cir.1993).

### B. *Counts IV, V, VI and VII*

The Court had jurisdiction over Carl's Title VII claims under 28 U.S.C. § 1331, which grants jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." The Court has jurisdiction over Carl's state law claims under 28 U.S.C. § 1367, which extends federal jurisdiction to all claims that are sufficiently related to the claims on which original jurisdiction is based so as to be part of the same case or controversy. Since Carl's Title VII claims have been dismissed, the Court's continuing jurisdiction rests entirely on § 1367(a), the supplemental jurisdiction statute.

Section 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction ... if ... the district court has dismissed all claims over which it has original jurisdiction." In deciding whether to decline jurisdiction over state law claims when no original jurisdiction claims remain pending, a district court should consider judicial economy, convenience, fairness and comity. *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251 (7th Cir.1994) (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

The Court has considered the foregoing factors and finds that it is appropriate to decline to exercise jurisdiction over the remaining claims in this case. Although this case has proceeded through discovery to the summary judgment stage, it would not greatly serve judicial economy to address the remaining issues in this Court. The existing discovery may be used in any state court action that may follow dismissal in this forum, and state court judges are far better prepared than federal courts to address questions of state law such as battery, assault and intentional infliction of emotional distress. Because of its location in proximity to the plaintiff, who lives in Paducah, Kentucky, and the defendants, who are both in Massac County, Illinois, an Illinois court in Massac County would be more convenient to the parties and to the witnesses than the federal court in Benton, Illinois, which is approximately 70 miles away. Finally, it would work no unfairness to the parties to have the remainder of this case decided in state court. For these reasons, the Court will dismiss Counts IV, V, VI and VII for lack of subject matter jurisdiction.

### VI. Conclusion

For the foregoing reasons, the Court hereby:

- **GRANTS in part** and **DENIES in part** the City's Motion for Leave to File a Reply in Excess of Five Pages and for Leave to File a Response to Plaintiff's Statement of Contested Facts (Doc. 51); the motion is granted to the extent that it seeks to file a reply brief in excess of five pages and is denied to the extent that it seeks leave to file a response to Carl's statement of contested facts;

- **GRANTS in part** and **DENIES in part** the City's Motion for Summary Judgment (Doc. 39); the motion is granted to the extent that it requests summary judgment on Counts II, III, VIII and XV and is denied to the extent that it requests summary judgment on Count VII;

- **RECONSIDERS** its order of June 2, 2000, (Doc. 23), **VACATES** that order, **GRANTS in part** and **DENIES in part** Parmely's Motion to Dismiss (Doc. 13); the motion to dismiss is granted to the extent that it seeks dismissal of Count I and is denied to the extent that it seeks dismissal of Counts IV, V and VI; and **DISMISSES** Count I;

- **DISMISSES for lack of subject matter jurisdiction** Counts IV, V, VI and VII;
- **DENIES as moot** the City's motions in limine (Docs. 52, 53, 54 and 55); and
- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**