In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3827

Gail Johnson,

Plaintiff-Appellant,

v.

Nordstrom, Inc., James M. Johansson
and Richard J. Archer,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 97-C-1673--Richard L. Young, Judge.

Argued April 2, 2001--Decided July 20, 2001


   Before Bauer, Cudahy, and Easterbrook,
Circuit Judges.

   Cudahy, Circuit Judge.  Gail Johnson
appeals a grant of summary judgment to
Nordstrom, Inc. on her Title VII claims
of employment discrimination, retaliation
and constructive discharge. We affirm.

I.

   Johnson was hired in 1995 to work as a
salesperson in the cosmetics department
at Nordstrom's retail department store in
downtown Indianapolis. Six months after
she was hired, Johnson was transferred to
the men's fragrance counter to work as a
fragrance counter manager. In February
1997, Johnson sought a promotion to the
intriguing position of beauty director.
At the time, she had more than 13 years
of cosmetics experience. Richard Archer,
who was then the manager of the cosmetics
department, was responsible for filling
the beauty director position. Archer
interviewed Johnson and was aware of her
experience and qualifications for the
job. But he selected another employee for
the position--one who, Johnson alleges,
had only two years of cosmetics
experience. When Johnson questioned
Archer about his decision, he told her he
had selected the other employee because
she had more seniority at Nordstrom and
she had a "better feel for the Nordstrom

customer."

Johnson, an African-American, filed a charge of race discrimination against Nordstrom with the Equal Employment Opportunity Commission (EEOC). In response, Nordstrom indicated that Johnson was not qualified for the beauty director position, and that Deanne Bennett, the (white) person who got the job, was more qualified. Nordstrom claimed that Johnson, during her interview for the job, said she believed the most important part of the job was "sales," although that was incorrect because the position primarily involved training and other interaction with co-workers. Nordstrom did not believe Johnson would be qualified for this aspect of the job because she was perceived by her co-workers as a "shark"--apparently a retail term for a sales employee who serves more than one customer at a time, thereby depriving co-workers of commission opportunities. This perception was a source of tension between Johnson and her co-workers. And Bennett had superior Nordstrom experience: Johnson at the time had six months experience with Nordstrom, while Bennett had worked there for three years. In April 1997, another white employee was promoted, this time to the position of assistant manager. Archer, without considering Johnson for the position, gave the job to Lynette Irwin, who had two months of part-time experience at Nordstrom. But unlike Johnson, Irwin had management experience at Nordstrom; in fact, she had served as Johnson's supervisor. Johnson filed another charge of discrimination with the EEOC. Nordstrom responded that Johnson was not considered for the position because Archer believed she was not interested in it. Nordstrom later indicated that Johnson did not exhibit the leadership and team-playing skills Archer was seeking for the position.

Johnson's retaliation claim is two-fold. First, she claims that Nordstrom retaliated against her for filing the first EEOC charge by failing to promote her to the assistant manager position. Second, she claims that Archer and Irwin took specific retaliatory actions against her: they "saved stock work" for her and they wrongly accused her of stealing customers from other salespersons.

Further, Johnson alleges that Irwin allowed other employees to falsely accuse her, gave sales leads to other employees and advised them to come to work early to do stock work so they would not lose time off the sales floor. Archer and Irwin apparently also monitored Johnson to determine whether she was in fact stealing customers. In November 1997, Johnson resigned.

Johnson filed a complaint against Nordstrom, James Johansson (the store manager) and Archer under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. sec. 1981. She alleged race discrimination in the failure to promote her, retaliation and constructive discharge. As noted, her retaliation claim consisted of, inter alia, Nordstrom's failure to promote her to the assistant manager position and Irwin's and Archer's retaliatory conduct. Johnson also alleged a state claim for intentional infliction of emotional distress. In response, Nordstrom filed a motion for summary judgment and a motion to strike certain portions of affidavits filed by Johnson. Johnson filed a motion in opposition to summary judgment and a motion to strike affidavits submitted by Nordstrom. The district court denied Johnson's motion to strike, granted in part Nordstrom's motion to strike and granted Nordstrom's motion for summary judgment on all counts. It concluded that Johnson had not demonstrated a prima facie case on her failure to promote claim. The court also found that Johnson did not show that Nordstrom's reasons for failing to promote her were retaliatory; she could not prove that Nordstrom's stated reasons were pretextual. As to Archer's and Irwin's retaliatory conduct, the court concluded that Johnson failed to make a prima facie case. It also concluded that the conduct was not extreme or outrageous, such that would support Johnson's claim for intentional infliction of emotional distress. Johnson appeals.

II.

As everyone should know, we review a grant of summary judgment de novo, viewing all the facts and inferences in the light most favorable to the non-moving party. See Pafford v. Herman, 148 F.3d 658, 665 (7th Cir. 1998). "Summary

judgment may be granted only when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Pafford, 148 F.3d at 665.

To defeat a motion for summary judgment in a Title VII case, a plaintiff who cannot provide direct evidence of discrimination may use the "burden-shifting" method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this indirect method of proof, the plaintiff first may raise an inference of discrimination by offering sufficient evidence to establish a prima facie case. See id. at 802-05. If the plaintiff succeeds, the burden then shifts to the employer, who must articulate a "legitimate, nondiscriminatory reason" for the adverse action. See Pafford, 148 F.3d at 665 (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "If the employer carries this burden, then the burden shifts back to the plaintiff to produce 'evidence that would, if believed by a trier of fact, show that the true reason for the employment action was discriminatory.'" Pafford, 148 F.3d at 665 (quoting Sattar v. Motorola, Inc., 138 F.3d 1164, 1169 (7th Cir. 1998) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993))).

To establish a prima facie case of race discrimination in a failure to promote context, the plaintiff must show: 1) she is a member of a protected group; 2) she was qualified for the position sought; 3) she was rejected for the position; and 4) the employee promoted was not a member of the protected group and was not better qualified than the plaintiff. See Payne v. Milwaukee Cty., 146 F.3d 430, 434 (7th Cir. 1998). It is undisputed that Johnson satisfies the first criterion. But the district court found that she failed to meet other elements of the prima facie case.

A.

The district court first concluded that Johnson had failed to make out her prima facie case of discrimination because she had not met her burden of showing that

she was qualified for the beauty director position. The court found that the job consisted of training staff; directing the Nordstrom make-up team; overseeing promotional events and addressing staff questions and concerns. Entry on Plaintiff's Motion to Strike, Defendants' Motion to Strike, and Defendants' Motion for Summary Judgment at 36 (Sept. 26, 2000). The court concluded that Johnson was not qualified for this position because of 1) Johnson's interview answer (misstating the most important element of the position); 2) Johnson's tension with her co-workers; and 3) Johnson's failure to observe certain work policies. These factors do not appear to establish that Johnson was not qualified for the job. But we need not decide that issue; rather, we conclude that these are the reasons proffered by Nordstrom for failing to promote Johnson, and that Johnson has failed to demonstrate that these reasons are pretextual. See EEOC v. Our Lady of the Resurrection Med. Ctr., 77 F.3d 145, 150 (7th Cir. 1996) ("To expedite the process it may be preferable to get past the prima facie case and examine the pertinent issue of whether there was discrimination in a job action."); see also Holmberg v. Baxter Healthcare Corp., 901 F.2d 1387, 1391 (7th Cir. 1990) (where the plaintiff had not met the burden of showing pretext, it was not necessary to decide whether the plaintiff established a prima facie case).

To demonstrate pretext, "a plaintiff must show more than that the employer's decision was incorrect; the plaintiff must also show the employer lied about its proffered explanation." Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998) (citing Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995)). Without direct evidence of pretext, the plaintiff must "prove pretext indirectly by showing one of the following: (1) Defendant's explanation of Plaintiff's discharge had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) at least the reason stated was insufficient to warrant the [allegedly discriminatory action]." Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1133 (7th Cir. 1994) (citing Smith v. General Scanning, Inc., 876 F.2d 1315, 1319 (7th Cir. 1989)).

Thus, Johnson's burden was to show that Nordstrom lied when it stated that it believed Johnson was unqualified for the beauty director position, or when it stated that it believed Bennett was more qualified. Johnson's subjective belief that she was better qualified than Bennett does not, without more, demonstrate pretext. See Johnson v. University of Wisconsin-Eau Claire, 70 F.3d 469, 481 (7th Cir. 1995).

Johnson takes issue with the district court's reliance on her alleged interview answer stating that sales would be the primary aspect of the beauty director's job. Johnson claims that "even if she did [give that answer], that was not necessarily a wrong answer, because increased sales, indirectly, through the training of Cosmetics Associates, is the ultimate goal of any retailer . . . ." This, however, does not undermine the employer's honest belief that sales was not the main aspect of the job, and that Johnson indicated in her interview that she was unaware of this fact. Even viewing these facts in the light most favorable to Johnson, whether the interview answer was right or wrong is for Nordstrom to decide, and does not demonstrate that this reason for failing to promote Johnson was pretextual. See Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 890 (7th Cir. 1997) ("Plaintiffs lose if the company honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless.") (citing McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992)).

Johnson also argues that her "stealing" of customers and violation of work rules were disputed. Whether she stole customers or not is irrelevant; what is relevant is the undisputed fact that her co-workers thought she did. Johnson has failed to demonstrate that this was a false justification for Nordstrom's refusal to promote her. Likewise, the disputed allegation that Johnson violated several workplace policies was not shown to be pretextual--simply disputed. It is well established that an employer is free to develop its own criteria in determining whom to promote, and Johnson has failed to demonstrate that these were not Nordstrom's true rationales. See, e.g., Schaffner v. Glencoe Park Dist.,

No. 00-4144, 2001 WL 748076, at *3 (7th Cir. July 5, 2001).

Johnson's "evidence" of pretext fails to indicate that Nordstrom's proffered reasons are not worthy of credence. For example, she claims that Nordstrom's promotion policies are not sensible. But it is not our place to evaluate the wisdom of an employer's business decisions. See Gordon v. United Airlines, Inc., 246 F.3d 878, 889 (7th Cir. 2001) (citing Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000)). We only require that an employer honestly believed its reason for its actions, even if its reason is "foolish or trivial or even baseless." Brill v. Lante Corp., 119 F.3d 1266, 1270 (7th Cir. 1997); see also Schaffner, 2001 WL 748076, at *4. Johnson's other "evidence" of pretext is equally unconvincing. She comes closest to the mark when she says that the alleged vacillation in Nordstrom's reasons for failing to promote her creates an issue of fact as to pretext. Johnson relies on our decisions in Gordon and Lawson v. CSX Transp., Inc., 245 F.3d 916 (7th Cir. 2001). In both those cases, however, pretext was demonstrated by not only shifting but also conflicting, and at times retracted, justifications for adverse treatment. See Gordon, 246 F.3d at 890; Lawson, 245 F.3d at 931-32 & n.13. Here, Nordstrom simply supplemented its explanations in the context of EEOC charges and litigation; there has been no retraction of any of its reasons for failing to promote Johnson nor are any of its reasons inconsistent or conflicting. Thus, Johnson has failed to demonstrate that Nordstrom's legitimate, non-discriminatory reasons for failing to promote her to beauty director were pretextual.

B.

When considering the failure to promote Johnson to the assistant manager position, the district court again relied on criteria that seem more appropriately characterized as non-discriminatory reasons for failing to promote than evidence that Johnson was not qualified. Here the district court found that Johnson was qualified, but held that she failed to demonstrate that she was better qualified than Irwin, the employee who received the position. The court reasoned

that Johnson demonstrated her qualifications by presenting evidence to dispute Nordstrom's claims that she stole customers, had tension with her co-workers, improperly utilized breaks and shirked stock work.

On the issue whether Johnson was more qualified than Irwin, Johnson argued that 1) Irwin was only part-time and had fewer years of experience; 2) the head of human resources was concerned about Irwin's qualifications for the job; and 3) Archer exhibited favoritism toward Irwin. The court noted that Irwin served as Johnson's supervisor prior to her promotion, and thus--unlike Johnson--had management experience within Nordstrom. Further, the court reasoned, the concerns about Irwin by the human resources chief do not show that she believed Johnson was more capable than Irwin. And third, simple favoritism cannot be the basis of a race-related complaint under Title VII.

As with the beauty director position, we decline to consider whether Johnson demonstrated a prima facie case for the assistant manager promotion because again she failed to meet her burden of demonstrating that Nordstrom's proffered reasons were pretextual. Johnson offered nothing to refute the legitimate, nondiscriminatory reason advanced: "Nordstrom, through manager Archer, honestly believed that she did not possess leadership skills required for a management position . . . ." Entry on Plaintiff's Motion to Strike, Defendant's Motion to Strike, and Defendants' Motion for Summary Judgment at 46-47. Because Johnson was unable to present evidence that Archer was lying, lack of pretext is a clearer ground for affirming the grant of summary judgment on the failure to promote claim.

III.

Johnson next argues that Nordstrom retaliated against her for filing EEOC charges for failure to promote her to beauty director. Her retaliation claim is two-fold: first, Johnson argues that Nordstrom retaliated by failing to promote her to the assistant manager position. Second, she contends that Archer and Irwin mistreated her in retaliation for filing the charges.

The district court dismissed the claim of retaliation based on the failure to promote because, although Johnson had demonstrated a prima facie case of retaliation, she could not show that Nordstrom's reasons for not promoting her to assistant manager (lack of team playing and leadership skills and her perception as a "shark") were pretextual. As we have discussed in Part II.B, above, we agree.

The district court next considered Johnson's claim of mistreatment by Irwin and Archer. It concluded that Johnson's claim did not raise allegations "of the severity necessary to be classified as an adverse employment action" and she therefore had failed to establish a prima facie case. To make a prima facie case for retaliation, a plaintiff must demonstrate that 1) she engaged in a statutorily protected activity; 2) she suffered an adverse employment action after that activity; and 3) there was a causal link between the adverse action and the protected activity. Sweeney v. West, 149 F.3d 550, 555 (7th Cir. 1998). The district court did not elaborate on its finding that the mistreatment could not be classified as an adverse employment action, but, in any event, we can affirm on other grounds. Johnson admitted that Irwin was unaware of Johnson's filing of the EEOC charges, and that therefore her conduct could not have been retaliatory. See O'Connor v. Chicago Transit Auth., 985 F.2d 1362, 1369-70 (7th Cir. 1993); Causey v. Balog, 162 F.3d 795, 803-04 (4th Cir. 1998). And it is undisputed that Archer treated Johnson as poorly before her filing of the EEOC charges as he did afterwards. If there was "no ratcheting up of the harassment" after the complaint was filed, the complaint could not have been the cause of the allegedly retaliatory conduct. See McDonnell v. Cisneros, 84 F.3d 256, 259 (7th Cir. 1996). Thus, we find that Johnson failed to show that there was a causal link between the adverse action and the protected activity, and we therefore agree with the district court insofar as it found that Johnson failed to make a prima facie case.

IV.

Johnson argues that the same conduct

that forms the basis of her discrimination and retaliation claims amounts to constructive discharge. Specifically, Johnson alleges that Archer and Irwin "saved stock work" for her and wrongly accused her of stealing customers. Further, she contends, Irwin allowed other employees to falsely accuse her, gave sales leads to other employees and advised other employees to come to work early to do stock work so they would not lose time off the sales floor. Johnson also charges that Archer and Irwin monitored her to determine whether she was, in fact, stealing customers. Johnson claims that these actions, combined with the failure to promote Johnson on account of her race, were so intolerable that she was constructively discharged. But these allegations are a far cry from the conduct needed to support a constructive discharge claim. "[T]o state a claim for constructive discharge, a plaintiff needs to show that her working conditions were so intolerable that a reasonable person would have been compelled to resign." Chambers v. American Trans Air, Inc., 17 F.3d 998, 1005 (7th Cir. 1994) (citing Henn v. National Geographic Soc., 819 F.2d 824 (7th Cir.), cert. denied, 484 U.S. 974 (1987)). Such conditions typically include much more egregious allegations than those cited by Johnson. To be actionable, "the conduct at issue must 'ha[ve] the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.'" Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 397 (7th Cir. 1999) (quoting Saxton v. American Tel. & Tel., Co., 10 F.3d 526, 533 (7th Cir. 1993)). The actions of Archer and Irwin were not so intolerable as to force her departure.

V.

Last, Johnson takes issue with the district court's striking of several paragraphs of affidavits submitted in support of her allegation of discrimination. We review a district court's decision to strike an affidavit for abuse of discretion. Clark v. Takata Corp., 192 F.3d 750, 760 (7th Cir. 1999) (citing Buckner v. Sam's Club, Inc., 75 F.3d 290, 292 (7th Cir. 1996)).

The district court struck portions of affidavits of Nordstrom employees that may have reflected a racially charged work environment at Nordstrom. For example, one affidavit indicated that an employee was "written up" for allegedly giving preferential treatment to black customers over white customers. Rule 56(e) of the Federal Rules of Civil Procedure provides that affidavits in support of motions for summary judgment must 1) be made with personal knowledge; 2) set forth facts that would be admissible into evidence; and 3) show affirmatively that the affiant is a competent witness. The court struck portions of the affidavits for lack of personal knowledge, as inadmissible hearsay or as conclusory and self-serving.

Johnson argues that the statements were not submitted for the truth of the matters asserted, "but rather to demonstrate that such racist conduct occurred and that racist statements were made." She also contests the court's decision to strike other paragraphs of the affidavits because of "lack of knowledge." Finally, Johnson contests the decision to strike certain portions of the affidavits as conclusory and self-serving.

We need not decide whether the portions of these affidavits were improperly stricken, because--even if they were-- their admission would not help Johnson's case. Nordstrom correctly argues that nothing struck from the affidavits would create a material issue on the summary judgment question since the statements were offered to demonstrate a racially hostile environment and Nordstrom's racial animus. They would not be material because:

Liability under Title VII does not turn on the bigotry of company managers unless that bigotry resulted in injury to the plaintiff. A showing of other instances of discrimination in the company may have evidentiary value, but it is not a substitute for a showing of injury to the plaintiff. There therefore needs to be a link between [the] manager's alleged prejudice, and the decisions that [the plaintiff] is challenging.

Chambers, 17 F.3d at 1004 (citation

omitted).

The statements Johnson sought to have admitted presumably were for the purpose of providing direct evidence of discrimination on the part of Nordstrom, thus ostensibly obviating the need for Johnson to surmount the obstacles in the path of an indirect showing. But affidavits showing a generally racially charged environment, without more, would not help Johnson's cause.

Johnson also contests the striking of portions of her own affidavit because the district court concluded that they contradicted her deposition testimony. First, the statement that Johnson "was never informed by anyone at Nordstrom that [her] job performance was lacking or needed improvement" was contradicted by her deposition testimony that Irwin confronted her about stealing customers and that Irwin was taking notes on Johnson. Second, the statement that Johnson "never received any verbal or written reprimands for [her] interactions with [her] co-workers" clashed with her testimony that Irwin confronted her about stealing customers. Third, Johnson's statement that "Archer never discussed breaks or overtime with me" was contradicted by her testimony that he did. Johnson offers nothing but a bald assertion that her statements were not contradicted by her testimony, but instead "supplemented" her testimony. There is no abuse of discretion here. "[A]n affidavit cannot be used to create a genuine issue of material fact where the affidavit differs from prior deposition testimony to the point that it is unreliable." Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 720 (7th Cir. 1998).

The district court also struck Johnson's statement as follows: "As a co-worker, I was able to assess Bennett's performance." The court concluded that this statement was also inadmissible because it contradicted Johnson's deposition testimony. In Johnson's testimony, she said she could not compare her customer service performance to Bennett's. The deposition testimony is, therefore, limited, and there is no clear contradiction; perhaps there were other aspects of Bennett's performance that Johnson felt she could assess. However,

this error is harmless; admission of this statement would not have, and should not have, changed the result.

VI.

For the foregoing reasons, we AFFIRM the judgment of the district court.