In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2494

Harriet Rizzo,

Plaintiff-Appellant,

v.

Michael F. Sheahan, in his official capacity
as Sheriff of Cook County, Illinois,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 3995--Nan R. Nolan, Magistrate Judge.

Argued January 18, 2001--Decided September 20, 2001


   Before Cudahy, Kanne, and Rovner, Circuit
Judges.

   Kanne, Circuit Judge.  Harriet Rizzo, a
former employee of the Cook County
Sheriff's Department, filed suit against
Michael F. Sheahan, the Sheriff of Cook
County, alleging that she was sexually
harassed by her supervisor, Michael
Mahon, and subjected to multiple acts of
retaliation, including her eventual
termination, for complaining about her
treatment. Sheahan moved for summary
judgment on both of Rizzo's claims. The
district court granted the motion,
finding that Mahon's alleged conduct was
not so severe or pervasive that it
created a hostile work environment and
that the Cook County Merit Board's
decision to terminate Rizzo was not an
act of retaliation. Although we disagree
with the district court's assessment of
the severity of the alleged conduct, we
affirm its decision as to Rizzo's claim
of sexual harassment because we find that
Mahon's deplorable behavior did not occur
because of Rizzo's sex but instead was
the product of Mahon's animosity toward
Rizzo's husband. Additionally, we find
that the district court properly found
that Rizzo has not proven that Sheahan's
legitimate, non-discriminatory reasons
for her termination were a pretext for
retaliation. Therefore, we will also

affirm the court's grant of Sheahan's motion on this claim.

I. History

Harriet Rizzo was employed by the Cook County Sheriff's Department from February 1, 1985 until her termination on February 3, 1994. At the time of her termination, Rizzo worked as an investigator in the Electronic Monitoring Unit (the "E.M.U.") of the Sheriff's Department of Community Supervision and Intervention. Rizzo began working in this position on July 14, 1991, and her immediate supervisor was Assistant Chief Michael Mahon.

Rizzo describes three specific incidents of harassment by Mahon. The first occurred some time in October of 1992. Rizzo's fifteen-year-old daughter, Jennifer Simpson, was waiting for Rizzo to finish her shift in the entranceway of the E.M.U. Mahon noticed Simpson and asked another officer who she was. The officer told Mahon that Simpson was Rizzo's daughter. Mahon approached Rizzo, asking her if Simpson was her daughter. Rizzo indicated that she was, to which Mahon responded, "Oh, you're an old thing aren't you?" Taken aback by this comment, Rizzo answered that she guessed she was. Mahon then commented to Rizzo, "Well I'd like to fuck her." Understandably, Rizzo became very upset with Mahon, and she verbally expressed her anger. Mahon dismissed her outburst and walked away. Rizzo told her husband, Joe Rizzo, who worked as an investigator at the E.M.U., about Mahon's comment. Mr. Rizzo told his wife that he would report Mahon's comment to Chief Ricci, one of Mahon's supervisors.

The second incident Rizzo describes took place on February 18, 1993. Mahon approached Rizzo at work and told her that he had seen Rizzo's mother and daughter at a restaurant the night before and that he thought that Rizzo's daughter was very attractive. He again commented to Rizzo that he "would like to fuck" her daughter. Rizzo personally reported Mahon's conduct to Chief Ricci.

The third incident occurred at some unspecified time while Rizzo was standing at a copying machine in the E.M.U. Mahon walked by, "looked Rizzo over," and stated in a suggestive manner that he

wished he was Rizzo's husband. Two other officers who heard this comment told Mahon to "shut his mouth." Rizzo contends that Mahon made similar suggestive comments to Rizzo on several other occasions.

On March 9, 1993, Rizzo tendered a written memorandum to Chief Randy Pietrowski, alleging that Mahon had sexually harassed her. Investigator Barbara Bennett of the Internal Investigations Division ("IID") of the Cook County Department of Corrections conducted an investigation of Rizzo's allegation. After interviewing fifteen different people, including Rizzo, Mahon, Simpson, Mr. Rizzo, and Rizzo's mother, Bennett reported the following findings:

Assistant Chief Michael Mahon has a strong dislike and animosity against Investigator Harriet Rizzo's Husband, Joe Rizzo, and has succeeded in directing his hostility against Joe Rizzo through his Wife, Harriet Rizzo, which by his conduct has the purpose and the effect of unreasonably interfering with Harriet Rizzo's work performance and creating an intimidating, hostile and offensive working environment.

Although it is clear that this Investigator is unable to sustain the Charges of sexual harassment against Assistant Chief Michael Mahon as it is written under the General Order 3.7A, it is clear that Assistant Chief Mahon is unable to perform effectively, fairly and with reason as Assistant Chief of the E.M.U., therefore his appointment to that position should be seriously reconsidered.

Based on the information obtained through this Investigation, this Investigator would classify the Charge in this Case as "Simple Harassment," with the understanding that there are no General Orders written that would sustain that Charge.

Therefore, the evidence that is presented in its present state is such that it is recommended that this Investigation be classified as:

"INCONCLUSIVE"

Insufficient evidence to either prove or

disprove the Allegation.

After filing her complaint, Rizzo contends that she was subjected to multiple threats and acts of retaliation. On February 21, 1993, Assistant Acting Deputy Director Dioguardi visited Rizzo at her home to discuss her complaint. According to Rizzo, Dioguardi sought to intimidate her into withdrawing her complaint against Mahon. He told her that she would be fired if she insisted on pursuing her claim. Dioguardi then became upset with Rizzo and began screaming at her. Both Rizzo's mother and daughter heard Dioguardi tell Rizzo that she should not have reported this matter to IID and that she should consider transferring out of the E.M.U.

After Mahon learned of Rizzo's complaint, he ordered her into his office and proceeded to threaten to have her terminated if she did not withdraw her complaint. Mahon warned Rizzo that he had a lot of "clout" at the E.M.U., that all of the chiefs at the E.M.U. would back him up, and that he had the ability to make her and her husband's lives very miserable at work. Additionally, Rizzo received threatening phone calls at work and at home, warning that she and her family would suffer if she did not withdraw her complaint. She also contends that after she submitted her written memo in March, she was confronted at the E.M.U. by Mahon, Dioguardi, and Pietrowski. According to Rizzo, Mahon told her that "supervisors don't say they're sorry." Furthermore, Rizzo alleges that Mahon threatened to alter her work schedule, purposefully interfered with her ability to take a lunch break, and saw to it that she received two disciplinary warnings and was eventually transferred out of the E.M.U. to the records department.

Rizzo asserts that an investigation into her educational background and her eventual termination were acts of retaliation for her having filed a complaint against Mahon. According to Rizzo, the review of her educational credentials was a sham, designed to set her up to be terminated, and that the review did not begin until after she was interviewed by Investigator Bennett regarding her complaint in early May 1993. Although the Sheriff's policy

addressing internal investigations of sexual harassment complaints requires investigators to observe "strict confidentiality" and explains that "only those with an immediate need to know may become privy to the identity of the parties," twoadditional investigators from the Sheriff's Inspector General's Office, Investigators Beckman and Podolsky, sat in on the interview. Investigator Beckman later interviewed Rizzo on September 15, 1993 regarding her educational background. At the interview, Rizzo presented Beckman with a GED certificate she alleged to have received in November 1976, under her maiden name of Harriet Nuzzo. Beckman then showed Rizzo a copy of a GED certificate that he said he had retrieved from her file bearing the name Harriet Wagner. Rizzo denied having any knowledge of how that certificate ended up in her personnel file. According to Rizzo, Beckman took the certificate she brought to the interview and she has not seen it since.

Rizzo was suspended from work without pay on February 2, 1994, pending the outcome of a hearing before the Cook County Merit Board concerning her educational background. The hearing before the Board took place on June, 28, 1994, and the Board rendered its decision on December 6, 1994, terminating Rizzo, effective February 3, 1994. Rizzo was terminated for (1) violating the Board's rule requiring a high school diploma or a certification of equivalent formal education in order to qualify for the position of deputy sheriff and (2) falsely indicating on her employment application that she graduated from high school or that she received a certificate of equivalent formal education. Rizzo sought administrative review of her discharge in the Circuit Court of Cook County, Illinois. The circuit court affirmed the Merit Board's decision to terminate Rizzo, and she appealed that decision to the Illinois Appellate Court. While her challenge to her termination was pending before the Illinois Court of Appeals, Rizzo filed the current suit in the United States District Court for the Northern District of Illinois, claiming that she had been sexually harassed by Mahon, and then retaliated against for complaining about his behavior in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e

et seq. As explained above, Sheahan moved for summary judgment on both of Rizzo's claims, and the district court granted the motion. Rizzo now appeals.

## II.  Analysis

### A.  Standard of Review

We review the district court's grant of summary judgment de novo. See Warsco v. Preferred Technical Group, 258 F.3d 557, 563 (7th Cir. 2001). Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, we must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### B.  Rizzo's Claim of Sexual Harassment

Rizzo alleges that Mahon sexually harassed her in violation of Title VII by subjecting her to a hostile work environment. In order to prevail on this claim, Rizzo must establish that the alleged harassment occurred because of her sex. See Haugerud v. Amery Sch. Dist., 259 F.3d 678, 691 (7th Cir. 2001); see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) (quoting Harris Forklift Sys., Inc., 510 U.S. 17, 25, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (Ginsburg, J., concurring) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.")). Additionally, in order to be actionable, the harassment Rizzo complains of "must be sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Cooke v. Stefani Mgmt. Servs., Inc., 250 F.3d 564, 566 (7th Cir. 2001) (internal quotation

omitted). "In assessing the severity and pervasiveness of [Mahon's] conduct, we look to all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Russell v. Bd. of Trs. of Univ. of Ill., 243 F.3d 336, 343 (7th Cir. 2001) (quoting Smith v. Sheahan, 189 F.3d 529, 533-34 (7th Cir. 1999)). Furthermore, Rizzo must demonstrate that her work environment was both objectively and subjectively hostile. See Haugerud, 259 F.3d at 691. We have explained that "the work environment cannot be described as 'hostile' for purposes of Title VII unless a reasonable person would find it offensive and the plaintiff actually perceived it as such." Hostetler v. Quality Dining, Inc., 218 F.3d 798, 807 (7th Cir. 2000). The two comments Mahon made to Rizzo regarding her daughter are extremely severe. These sexually explicit comments made to a mother by her supervisor in reference to her fifteen-year-old daughter are significantly more offensive than the typical crass comments we have found to be insufficient to constitute harassment in other cases. See, e.g., McKenzie v. Ill. Dep't. of Transp., 92 F.3d 473, 480 (7th Cir. 1996); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995). Indeed, as a mother, it may be more disturbing to be subjected to these comments than to be personally subjected to many of the types of unwanted sexual advances we have seen in reviewing other harassment claims. Thus, it is no surprise that Investigator Bennett, after interviewing a number of people well acquainted with Rizzo, Mahon, and Mahon's behavior at the E.M.U., observed: "Mahon . . . by his conduct ha[d] the purpose and the effect of unreasonably interfering with Harriet Rizzo's work performance and creating an intimidating, hostile, and offensive working environment." We agree with this finding and conclude that a reasonable trier of fact could find that these comments were sufficiently severe to create a hostile work environment.

We also find that a reasonable trier of fact could conclude that Rizzo has demonstrated that her work environment was both objectively and subjectively

hostile. Not only would a reasonable person find that Mahon's behavior created an offensive environment, it is likewise clear from the record that Rizzo perceived Mahon's actions as having subjected her to a hostile work environment. After the first incident, Rizzo expressed her distress directly to Mahon and later pressed her husband to report the behavior to Mahon's supervisor. When Mahon again graphically suggested to Rizzo that he would like to have sexual intercourse with her teenage daughter, Rizzo complained directly to Mahon's supervisor and subsequently filed a written complaint alleging that she had been sexually harassed by Mahon.

Unfortunately, however, Rizzo's claim cannot succeed because she has produced no evidence indicating that Mahon's offensive behavior towards her was based on her sex. To the contrary, Rizzo spent significant time both in her brief and at oral argument documenting the animosity Mahon harbored towards Rizzo's husband, and explaining that this animosity was the reason Mahon was "going after" Rizzo. Additionally, Investigator Bennett, who ultimately concluded that Mahon's behavior constituted simple harassment, reinforced Rizzo's explanation, observing that "Mahon has a strong dislike and animosity against Investigator Harriet Rizzo's Husband, Joe Rizzo, and has succeeded in directing his hostility against Joe Rizzo through his Wife, Harriet Rizzo." Although we have concluded in other cases that a reasonable trier of fact may deduce that an individual is being harassed because of her sex even where the harassing behavior is not overtly gender based, see Haugerud, 2001 WL 869361, at *9, this case presents the unique situation where the plaintiff has produced clear evidence that the harassing behavior was not motivated by sex, and thus does not comply with the requirements of Title VII, see Oncale, 523 U.S. at 80 ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'"). Therefore, Title VII does not provide a remedy for Mahon's conduct. Finally, because we are unable to find that Rizzo was subjected to a hostile work environment within the meaning of Title VII, we need not analyze whether Sheahan could be held vicariously

liable for Mahon's actions.

## C. Rizzo's Claim of Retaliation

Rizzo also alleges that the investigation into her educational background and her eventual termination were acts of retaliation prohibited by Title VII for her having filed a complaint against Mahon and then refusing to withdraw that complaint. Sheahan contends that the Rooker-Feldman doctrine precludes Rizzo from pursuing this claim because her claim merely challenges the rulings of the Illinois courts upholding the Merit Board's decision to terminate her. In the alternative, Sheahan asserts that, even if Rizzo is permitted to pursue this claim, the district court properly granted his motion for summary judgment because there is no causal link between the filing of Rizzo's complaint of harassment and the proceeding before the Merit Board, especially because the investigation and proceedings that led to Rizzo's termination were initiated before she filed those charges.

The Rooker-Feldman doctrine provides that lower federal courts are precluded from exercising jurisdiction over claims that would require them to review a final judgment of a state court. See Rooker v. Fid. Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). "In order to determine the applicability of the Rooker-Feldman doctrine, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996). "If the injury alleged resulted from the state court judgment itself, the Rooker-Feldman doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional." Centres v. Town of Brookfield, Wisconsin, 148 F.3d 699, 702 (7th Cir. 1998). If, however, "the injury alleged is distinct from that judgment, i.e., the party maintains an injury apart from the loss in state court and not 'inextricably intertwined' with the state judgment . . . res judicata may apply, but Rooker-Feldman does not." Garry, 82 F.3d at 1365-66. Thus, "the pivotal

inquiry is whether the federal plaintiff seeks to set aside a state court judgment or whether [she] is, in fact, presenting an independent claim." Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999) (quotation omitted).

Rizzo contends that she was terminated in retaliation for having filed a complaint of sexual harassment againstMahon. The decision to terminate Rizzo was made by the Cook County Merit Board. Rizzo appealed this decision and both the Illinois Circuit Court and Appellate Court affirmed the Board's ruling. Although Rizzo was certainly displeased with the conclusion reached by the Illinois courts, the injury she alleges before this court did not result from the state court judgment. Instead, Rizzo filed this claim because she did not receive the relief she sought from the Illinois courts--a determination that she should not have been terminated. Our cases contemplating the applicability of the Rooker-Feldman doctrine have recognized the difference between "a federal claim alleging injury caused by a state court judgment (necessarily raising the Rooker-Feldman doctrine) and a federal claim alleging a prior injury that a state court failed to remedy (raising a potential res judicata problem but not Rooker-Feldman)." Garry, 82 F.3d at 1366. Thus, because the injury Rizzo alleges in this court was incurred before she sought relief in state court, we find that the Rooker-Feldman doctrine does not apply to her claim of retaliation.

Rizzo's claim does, however, raise a potential res judicata problem. Also known as claim preclusion, res judicata is an affirmative defense designed to prevent the "relitigation of claims that were or could have been asserted in an earlier proceeding." D & K Props. Crystal Lake v. Mut. Life Ins. Co. of N.Y., 122 F.3d 257, 259 (7th Cir. 1997). By asking us to find that she was terminated in retaliation for filing a complaint, Rizzo essentially asks us to ignore the fact that the Illinois courts affirmed the Merit Board's decision to terminate her. See Garry, 82 F.3d at 1367. ("A plaintiff who loses and tries again encounters the law of preclusion. The second complaint shows that the plaintiff wants to ignore rather than upset the judgment of the state tribunal.") However, because

Sheahan did not raise this affirmative defense before the district court, it has been waived, and therefore, we need not further consider its applicability to Rizzo's claim. See Marcus v. Sullivan, 926 F.2d 604, 615 (7th Cir. 1991) Thus, we proceed to the merits of Rizzo's retaliation claim.

To prevail on her claim of retaliation, Rizzo must either present direct evidence of retaliation or use a burden-shifting approach. See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc., 254 F.3d 644, 653 (7th Cir. 2001). Although Rizzo alleges that Mahon and Chief Dioguardi threatened to have her terminated if she continued with her complaint against Mahon, these allegations do not constitute direct evidence of her claim that the Merit Board's decision to terminate her was an act of retaliation that violated Title VII. See Fyfe v. City of Fort Wayne, 241 F.3d 597, 602 (7th Cir. 2001) ("When a plaintiff proceeds under the direct proof method, allegedly discriminatory statements are relevant only if they are both made by the decisionmaker and related to the employment decision at issue.") (quotation omitted). Therefore, she must pursue her claim through the burden-shifting framework provided in our case law. Under this framework, Rizzo must establish a prima facie case of retaliation by demonstrating that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action subsequent to her filing the complaint against Mahon; and (3) there was a causal link between the adverse action and the protected activity. See Dunn v. Nordstrom, Inc., No. 00-2958, 2001 WL 898757, at *2 (7th Cir. Aug. 10, 2001); Sanchez v. Henderson, 188 F.3d 740, 745-46 (7th Cir. 1999). If Rizzo is able to prove these elements by a preponderance of the evidence, then the burden shifts to Sheahan to present a legitimate, non-discriminatory reason for Rizzo's termination. See Hoffman-Dombrowski, 254 F.3d at 653. Once Sheahan provides such a reason, the burden shifts back to Rizzo who must then demonstrate that Sheahan's stated reason for terminating her was merely a pretext for retaliation. See Alexander v. Wisc. Dep't of Health and Family Services, No. 00-2603, 2001 WL 965938, at *6 (7th Cir. Aug. 27, 2001).

A plaintiff may establish that the reasons offered for her termination were a pretext for retaliation by presenting either direct evidence indicating that the defendant was "'more likely than not motivated by a discriminatory reason,' or indirect evidence showing that the defendant['s] stated reasons are not credible." Id. (quoting Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1039 (7th Cir. 1993)). Because Rizzo has provided no direct evidence of retaliation in this case, she must rely on indirect evidence to demonstrate that Sheahan's stated reasons were pretextual. To do so, Rizzo must prove "one of the following: (1) Defendant's explanation of Plaintiff's discharge had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) at least the reason stated was insufficient to warrant the [allegedly retaliatory action]." Johnson v. Nordstrom, Inc., No. 00-3827, 2001 WL 818874, at *3 (7th Cir. July 20, 2001) (quotation omitted).

Rizzo has met the first two requirements of her prima facie case: she engaged in a statutorily protected right when she filed a complaint against Mahon for sexual harassment and she was terminated after she filed this complaint. It is not as clear, however, that Rizzo has shown a causal link between her termination and her filing the complaint against Mahon. "To prove a causal link, the plaintiff is required to show that the employer would not have taken the adverse action 'but for' the plaintiff's engagement in the protected activity." Id. (citing McKenzie v. Ill. Dep't of Transp., 92 F.3d 473, 483 (7th Cir. 1996)). The district court shared our concern with this aspect of Rizzo's prima facie case; however, it aptly recognized that even assuming argu endo that Rizzo has established her prima facie case, she still cannot prevail. See Rizzo v. Sheahan, No. 97 C 3995, 2000 WL 679982, at *16-24 (N.D. Ill. May 22, 2000). Sheahan has provided two legitimate, non-discriminatory reasons for Rizzo's termination by offering the reasoning of the Merit Board's decision: (1) Rizzo violated the Board's rule requiring a high school diploma or a certification of equivalent formal education in order to qualify for the position of deputy sheriff and (2) she misrepresented on her employment

application and questionnaire that she graduated from Gage Park High School in 1977 and misrepresented on her questionnaire that she received a GED certificate from Daley College in 1978–79. Thus, Rizzo would be required to prove that these legitimate, non-discriminatory reasons for her termination were a pretext for retaliation. See Alexander, 2001 WL 965938, at *6. A review of Rizzo's allegations reveals that she has failed to meet this burden.

Rizzo argues that the following allegations demonstrate that her termination was an act of retaliation and that Sheahan's stated reasons for her termination were a pretext for that retaliation: Mahon threatened to have Rizzo fired if she did not withdraw her complaint; Chief Dioguardi told Rizzo that she would lose her job if she continued to pursue her complaint; she received phone calls threatening that she and her family would suffer if she did not drop her complaint; Mahon interfered with her ability to take a lunch break; Mahon made her work overtime; she received two disciplinary warnings; she was transferred out of the E.M.U.; she was suspended without pay while other individuals under investigation were permitted to continue working or were suspended with pay; and she was terminated. We cannot agree that these allegations establish pretext.

Although pathetic, Mahon and Dioguardi's threats, as well as Mahon's actions designed to inconvenience Rizzo at work, fail to demonstrate that the stated reasons for Rizzo's termination were a pretext for retaliation. Rizzo has not presented any evidence linking Mahon or Dioguardi to any aspect of the investigation of her educational background or the Cook County Merit Board's decision to terminate her. Thus, without more, these allegations are insufficient to undermine the stated reasons for Rizzo's termination.

Likewise, the phone calls Rizzo received suggesting that she and her family would suffer if she did not drop her complaint fail to establish pretext. Rizzo implies that Mahon made these telephone calls; however, she provides no evidence to support this assertion. Furthermore, even

if Mahon did make these calls, there is simply no evidence indicating that any of the individuals involved in the decision to terminate Rizzo had any knowledge of these calls or that they affected the Merit Board's decision in any way.

The investigation of Rizzo's educational background also fails to prove that Sheahan's legitimate, non-discriminatory reasons were a pretext for retaliation. Although Rizzo correctly points out that Investigator Beckman did not conduct a personal interview with her regarding her educational background until after she had given a statement to Investigator Bennett pertaining to her sexual harassment complaint, this fact does not prove that Rizzo was terminated for her decision to file a complaint. It is undisputed that the department-wide investigation of individuals suspected of having improper educational credentials began in early September of 1992, over six months before Rizzo filed her complaint of sexual harassment. It is also undisputed that Rizzo, by way of a different last name, was on the initial list of suspected employees compiled in the fall of 1992. Furthermore, over five months elapsed between Rizzo's interview with Bennett regarding her complaint and her interview with Beckman about her educational background.

Additionally, the fact that Investigator Beckman was present during Rizzo's interview with Investigator Bennett does not suggest that the grounds provided for Rizzo's termination were a pretext for retaliation. While Beckman's knowledge of Rizzo's complaint seems to exceed the limits of the Sheriff's confidentiality policy, this fact, in the context of the actual situation offers no evidence of pretext. Investigator Beckman, along with other investigators from the Sheriff's Inspector General's Office, was instructed to begin investigating some one hundred individuals, including Rizzo, in September of 1992, six months before Rizzo filed her complaint.

Finally, Rizzo's transfer to a different facility and her subsequent suspension without pay do not prove that Sheahan's stated reasons for her termination were a pretext for retaliation. Despite her allegation that this transfer was somehow Mahon's doing, the only relevant evidence

in the record indicates that this transfer in January of 1994 was temporary, pending the Merit Board's review of the investigation of Rizzo's educational background. Rizzo has failed to provide any evidence that this transfer was related to her decision to file a complaint against Mahon. Likewise, the record indicates that Rizzo's suspension without pay was also a temporary step taken in connection with the investigation of her educational background and that it was unrelated to her sexual harassment complaint. Here again Rizzo fails to rebut this evidence. We are not persuaded by Rizzo's unsupported assertion that other employees who were also under investigation were either allowed to continue to work or were suspended with pay. Although we are to view the facts in the light most favorable to Rizzo, drawing all reasonable inferences in her favor, we are not required to infer that she was terminated because she filed a complaint against Mahon based only on her unsubstantiated statement that other individuals under investigation were treated more favorably. See Frost Nat'l Bank v. Midwest Autohaus, Inc., 241 F.3d 862, 868 ("A court's obligation to draw all reasonable inferences in favor of a non-moving party . . . does not require that court to stretch existing evidence to reach conclusions or bolster arguments it could not otherwise support."). Therefore, we will affirm the district court's grant of Sheahan's motion for summary judgement on Rizzo's claim that her termination was in retaliation for her having filed her complaint.

D.  Rizzo's Claim of Pre-Termination Retaliation

  Rizzo's final claim on appeal alleges that she was subjected to various acts of retaliation in violation of Title VII before she was terminated. This claim asserts that each individual allegation she offered as evidence that her termination was an act of retaliation is, in and of itself, a violation of Title VII. Adverse employment actions other than termination can constitute retaliation in violation of Title VII. See Knox v. Ind., 93 F.3d 1327, 1334 (7th Cir. 1996) ("There is nothing in the law of retaliation that restricts the type of retaliatory act that might be visited

upon an employee who seeks to invoke her rights by filing a complaint. It need only be an adverse employment action . . . ."). However, for the reasons explained below, we do not find any of these allegations to be meritorious.

Rizzo alleges that her transfer out of the E.M.U. was an act of retaliation, orchestrated by Mahon, which resulted in her being placed in a position that offered significantly less responsibility than her previous position. This claim fails regardless of whether the position to which she was transferred presented such a decline in responsibility that it constituted an adverse employment action because she has failed to establish that the reasons provided for her transfer were a pretext for retaliation. As noted above, the record indicates that Rizzo's transfer was a temporary step taken in connection with the investigation into her educational background. Although Rizzo asserts that her transfer was Mahon's doing, she presents no evidence to support this contention or rebut Sheahan's stated reason for her transfer. Without more, Rizzo cannot prevail on this claim.

Rizzo also contends that her suspension without pay was an act of retaliation that violated Title VII. As explained above, however, the only evidence Rizzo provides in support of this allegation is her unsubstantiated statement that three other individuals also under investigation were either allowed to continue working or were suspended with pay. Without affidavits from these individuals, or some other form of evidence corroborating her statements, Rizzo cannot meet her burden to establish a claim of retaliation.

Finally, we combine the rest of the allegations Rizzo brings before this court because they all fail for the same reason. Although disconcerting, we find that the threats, phone calls, and inconveniences Rizzo faced at work did not "alter[ ] the terms or conditions" of her employment such that they can be characterized as adverse employment actions that constitute instances of actionable retaliation in violation of Title VII. See Spearman v. Ford Motor Co., 231 F.3d 1080, 1086 (7th Cir. 2000).

III.  Conclusion

   For the aforementioned reasons, we AFFIRM the district court's grant of Sheahan's motion for summary judgment on Rizzo's claims.