**Mary Margaret REED, Plaintiff–Appellant,**

v.

**MANTENO SCHOOL DISTRICT NO. 5, Defendant–Appellee.**

No. 02–2332.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 17, 2002.

Decided Feb. 26, 2003.

Before BAUER, CUDAHY, and COFFEY, Circuit Judges.

### ORDER

Dr. Mary Margaret Reed, a woman over forty years of age, filed this suit against Manteno School District No. 5 in February 2000, alleging sex and age discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 621. Reed argues that Manteno discriminated against her when it failed to promote her on two occasions and retaliated against her for filing an EEOC charge. The district court granted summary judgment for Manteno on all of Reed's claims, and we affirm.

The facts in this case are largely undisputed. Reed currently teaches fourth grade in the Manteno school district. She has a bachelor's degree, two master's degrees, and a Ph.D. and has been employed by Manteno since 1971. From 1971 to 1994, she was a teacher in the district, and from 1994 to 1999, she was the Director of Student Development at the middle school. The parties dispute the nature of Reed's position as Director of Student Development: Reed claims it was an administrative position akin to an assistant principalship, while Manteno asserts that it was merely a reassigned teaching position.

In 1999 a new intermediate school (roughly grades four and five, although the parties apparently disagree) was scheduled to open in the district, and a new superintendent, Dr. Newton Fink, was hired. As a result of these developments, the Manteno Board of Education (Board) altered the district's structure and eliminated the Student Development directorship. On

June 4, 1999, in a meeting with Dr. Fink, Reed was reassigned as a classroom teacher. After learning about her reassignment, Reed applied for the vacant principal position at the new intermediate school but did not receive an interview. This principalship (the "first principalship") was given to Andrew Furbee, a man under the age of 40, who was assigned to serve the dual role of one-year interim principal and Special Education Director for the school. Furbee has bachelor's and master's degrees but not a Ph.D.

After being denied the principalship, Reed continued to teach fourth grade. She filed her complaint with the Equal Employment Opportunity Commission in November 1999, alleging that Manteno discriminated against her based on her age and gender when it demoted her from Director of Student Development and failed to promote her to the intermediate school principalship.

In 2000 Reed applied and interviewed for another principalship, this time at Manteno Middle School (grades six, seven, and eight) (the "second principalship"). A principal selection committee interviewed Reed and two other candidates but ultimately recommended Trent Eschelman, a man under the age of 40 who also did not have a Ph.D. After considering the committee's findings as well as the comments of Dr. Fink—who stated that he did not trust Reed and did not think she was a "team player"—the Board eventually accepted the committee's recommendation and hired Eschelman. The Board made this decision knowing that Reed had filed her EEOC charge. Reed did not file any additional EEOC charges based on the retaliation claim or the failure to promote her to the second principalship.

Reed received a right-to-sue letter for the first failure-to-promote claim on February 11, 2000, and filed this suit shortly after being denied the second principalship. In her complaint Reed alleges that Manteno discriminated against her based on her gender and age by demoting her from Student Development Director to classroom teacher, by not promoting her to the two principal positions, and by retaliating against her for filing a complaint with the EEOC.

A magistrate judge, proceeding with the parties' consent, see 28 U.S.C. § 636(c), granted Manteno's motion for summary judgment. On Reed's failure-to-promote claims, the court found that Reed had established a *prima facie* case of discrimination but had failed to prove that Manteno's legitimate, nondiscriminatory reasons for not promoting her were pretextual. Similarly, the court granted summary judgment on Reed's retaliation claim because Reed failed to show a causal link between her EEOC filing and Manteno's decision not to promote her to the second principalship. Finally, the court granted summary judgment on Reed's unfair-demotion claim based on its finding that the Board's elimination of her position as Director of Student Development did not constitute a demotion.

### Discussion

Reed appeals the findings of summary judgment on her failure-to-promote and retaliation claims but not on her unfair-demotion claim. We review the district court's grant of summary judgment *de novo* and examine the facts in the light most favorable to Reed, the non-moving party, drawing all reasonable inferences in her favor. *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 676 (7th Cir.2002). Reed concedes that there is no direct evidence of discrimination or retaliation, so her claims must be analyzed under the burden-shifting method first applied in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 731–32 (7th Cir.2001).

### I. Failure–to–Promote Claims

To succeed on her failure-to-promote claims under *McDonnell Douglas*, Reed must prove a *prima facie* case of discrimination by showing that: (1) she was a member of a protected class; (2) she applied for and was qualified for the position sought; (3) she was rejected for that position; and (4) the employee promoted was neither a member of the protected class nor more qualified than she. 411 U.S. at 802; *Johnson*, 260 F.3d at 731–32. The parties only dispute whether Reed satisfies the second prong. Although they agree that Reed applied for the second principalship, Manteno urges that she never formally applied for the first principalship. But Reed applied when she conveyed her interest in the position to Dr. Fink at their meeting on June 4, 1999. Because she was also qualified for the positions she sought—she had worked at Manteno for nearly 30 years and possessed several advanced degrees—Reed satisfied the second prong.

Since Reed proved a *prima facie* case of discrimination, the burden shifts to Manteno to articulate a legitimate, non-discriminatory reason for failing to promote her. *McDonnell Douglas*, 411 U.S. at 803; *Johnson*, 260 F.3d at 731–32. According to Manteno, Reed did not receive the first principalship because: (1) the district reassigned Furbee in a lateral move merely to an interim position; and (2) Furbee's salary could be funded by two different departments because he was serving as both the school's principal and its special education director. Further, Manteno explained that it did not promote Reed to the second principalship because the selection committee considered her the least qualified candidate. Specifically, the committee concluded that Reed had numerous time commitments outside of Manteno and might be unable to dedicate the time necessary to be a middle school principal. Committee members also noted that Reed was not a team player, that she had minimal experience integrating technology into the classroom, and that her "answers about school governance and dealing with staff members and other groups lacked depth and examples of how she would deal with a particular situation."

Since Manteno offered legitimate reasons for failing to promote Reed, the burden shifts back to Reed, who must demonstrate that the reasons offered by Manteno are actually a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Johnson*, 260 F.3d at 731–32. To do so Reed must show that the employer's proffered reasons are actually lies. *See Johnson*, 260 F.3d at 732. Reed has offered no evidence suggesting that Manteno did not believe its proffered reasons for not promoting her to either principalship. And a plaintiff cannot avoid summary judgment simply by claiming that a jury could disbelieve the reasons provided by an employer for making its employment decisions. *See Traylor v. Brown*, 295 F.3d 783, 791 (7th Cir.2002).

Reed argues that, given her far superior credentials compared to Furbee or Eschelman, she could have been denied promotion only because of discrimination. But differences among applicants' qualifications do "not constitute evidence of pretext 'unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.'" *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir.2002) (internal citations omitted). Although Reed may have more advanced degrees than the candidates hired for the positions, Furbee and Eschelman possessed other skills that led Manteno to believe that they were more qualified, and Reed provides no evidence to

discredit the committee's decision to consider those skills. Here, as in *Millbrook*, there is absolutely no evidence that the subjective criteria used by Manteno served as a "mask for discrimination." *Id.* at 1167.

## II. Retaliation Claim

Reed also argues that the district court erred in rejecting her retaliation claim because she could prove a causal link between her filing of the EEOC charge and Manteno's failure to promote her to the middle school principalship. Reed asks us to infer this causal link from the fact that Manteno failed to promote her to the first administrative position that became available after she filed the charge.

In *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir.2002), we recently clarified the standard for analyzing retaliation claims at the summary judgment stage and concluded that a plaintiff need not establish a causal link between the protected conduct and the adverse employment action. Instead retaliation claims should be analyzed under a burden-shifting methodology similar to that used to analyze other discrimination claims. *Id.* Here the district court appropriately determined that Reed met her *prima facie* case by showing that she had engaged in a statutorily protected activity—filing her EEOC charge in November 1999—and had suffered an adverse employment action—not being promoted to the second principalship. Reed presumably was performing her job satisfactorily, because she continued to teach fourth grade in the district throughout the period of the alleged retaliation. *Id.*

In response Manteno offers numerous non-invidious reasons for hiring Eschelman over Reed. For instance, committee notes taken during the process of selecting a new middle school principal reflect the committee's view that Eschelman could devote the necessary time to the position, provide leadership for the school, integrate technology into the classroom, and work with other staff members. Further, the committee concluded that Eschelman had the creativity and decision-making ability required of a principal. Although the committee praised Reed's motivational abilities and her dedication to Manteno and its students, the committee nevertheless concluded that Reed could not work as a "team player" and had insufficient experience integrating technology into the classroom, implementing policies on school governance, and managing staff relations.

Reed, however, has provided no evidence to suggest that Manteno's reasons were pretextual. She asserts essentially that Manteno promoted Eschelman because Dr. Fink commented negatively about her to the Board in retaliation for her filing the EEOC charge. But the committee members raised numerous concerns apart from those raised by Dr. Fink, and Reed offers nothing that casts suspicion on the honesty of the committee's concerns. Where the plaintiff employee provides nothing more than evidence about the relative merits and deficiencies of the candidates, we will uphold summary judgment. *See Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 787 (7th Cir.2001). Because Reed offers no evidence contradicting the committee's comments or Dr. Fink's concerns, Manteno is entitled to summary judgment on her retaliation claim.

## Conclusion

The district court properly granted summary judgment to Manteno on both her failure-to-promote and retaliation claims.

AFFIRMED.